GUENTHER, Defendant in Error, v. BIRKICHT'S ADMINISTRA-
TOR, Plaintiff in Error.

1. Where a step-son continues to reside in the family of his step-father after coming of age, as before, the law will not imply a contract to pay him for services rendered.

*Error to Cole Circuit Court.*

The case is stated in the opinion of the court.

*M. M. Parsons* and *H. Clay Ewing*, for plaintiff in error, that no contract was implied, cited Williams v. Hutchinson, 5 Barb., S. C., Rep. 122; 3 Comstock, 312; Andrus v. Foster, 17 Vermont, 556; 5 Watts & Seg. 513; 1 Parsons on Contracts, 257.

*Gardenhire*, for defendant in error, cited Freto v. Brown, 4 Mass. 675; 14 Pick. 512; 4 Wend. 403; Story on Contracts, § 11; 12 Wheaton, 341.

RYLAND, Judge, delivered the opinion of the court.

This was originally a claim against the estate of Henry Birkicht, for seven hundred and twenty-five dollars, in favor of Frederick Guenther, presented to the Cole county court for allowance. The account consisted of two items—one for a demand evidenced by note executed by Birkicht to Guenther, for the sum of $125; the other for four years' work and labor done for the deceased in his life-time by Guenther, at $150 per year, making $600.

The county court allowed the sum of $725, the full amount of the account against the estate, and the administrator, Ewing, appealed to the Circuit Court of Cole county.

Upon the trial of the cause in the Circuit Court at the August term, 1855, the jury found the issues for the plaintiff, and assessed his damages at the sum of $725. The administrator moved for a new trial, which being overruled, he excepted, and afterwards sued out his writ of error, and the case is now before this court on said writ of error.

From the bill of exceptions, it appears that Birkicht married the mother of the plaintiff, Guenther, who was a son by her former husband; that Birkicht moved from Germany to this state in 1841, and that his wife and his step-children moved out in 1842; that the plaintiff was sixteen or seventeen years old when he moved to this state with his mother in 1842; that he always lived with his step-father and his mother after her marriage with Birkicht, like one of the family; that he continued to live with them as one of the family until he went to California, in 1851; that he married and took his wife into the family and they lived as members of the family; that his wife had two children while living in the old man Birkicht's family; that Guenther worked as one of the family; that wages from 1847 were $150 per annum for men; and that Guenther's work was worth $150 per year. There was no proof of any promise to pay Guenther for his work—no agreement or under-

standing between the old man and his step-son in relation to this matter.

On the trial, the Circuit Court instructed the jury " that if they believed from the evidence that the plaintiff was the step-son of Birkicht, deceased, and performed work and labor for him after he was twenty-one years of age, the jury will allow plaintiff, in addition to the amount of the note, what such work and labor were reasonably worth, unless they find the demand is barred by the statute." " 2. If the work and labor continued up to 1851, the amount is not barred by the statute of limitations, for such an account is not barred until five years after the last work and labor is performed."

The defendant objected to the first instruction, and asked the court to instruct the jury as follows : " That, if the jury believe from the evidence that the deceased, Henry Birkicht, was the step-father of the plaintiff, and that the deceased took plaintiff in his house while he was a minor, and the plaintiff continued to live at the house of the deceased as one of his family, the presumption of any obligation or promise on the part of deceased to pay plaintiff any thing for his services during the time he so lived with the deceased is rebutted, and it devolves on the plaintiff to prove to the satisfaction of the jury that the deceased promised to pay plaintiff for his services." The court refused to give this instruction, and the defendant excepted.

The main question here is, upon which party is the burthen of proof to show the understanding of the parties that plaintiff should be paid for his services after coming of age ? Under the instructions given for plaintiff, the jury found for him. These instructions were to the effect that, upon the proof in the case, the plaintiff had made a *prima facie* case for recovery.

There is no controversy as to the plaintiff's right to recover on the note. The controversy alone rests on the item for four years' work and labor. This is for work and labor after the plaintiff becomes of age.

From the facts,—the plaintiff living in the family of the deceased as one of his children, and being provided for with his

wife as such,—the presumption that he was to be paid for his services, implied by law under other circumstances, is repelled, and it devolves upon the plaintiff to show affirmatively, that such was the understanding of the parties. The first instruction, therefore, given for the plaintiff did not properly declare the law in this case. The relation of step-father and step-children being one of very common occurrence in life, it is thought proper to notice some of the general rules and provisions of law upon this interesting subject. In the case of Williams v. Hutchinson, (5 Barb., S. C., Rep. 122,) the Supreme Court of New York held that a person is not bound to maintain the child of his wife by a former husband ; nor is he entitled, by law, to claim the services of such child, unless the latter chooses to render them. But if an individual does, in fact, maintain and support his step-child, in his family, and treats him as a member of it, the law, under such circumstances, will not imply a promise to pay the *step-child for the services* rendered ; nor will it permit a recovery therefor, unless an express promise is shown, or something to prove that such was the expectation on both sides. The fact of the step-father standing in *loco parentis*, effectually repels all presumption of service for hire or wages, and renders an express promise indispensable to the maintenance of an action by the step-child. In this case, Johnson, J., in delivering the opinion of the court, said : " A person is not bound to maintain the children of his wife by a former husband. Not being bound to provide for them, or furnish them with any support, he is not entitled to their services, provided they choose to live elsewhere ; and in the latter case, he can not recover for their services, either in his own right or that of the mother. While the mother remains a widow, she is bound to provide for her children, and is entitled to control them while under age, and to collect their earnings while in the service of others. But when she marries, her legal capacity is gone—she can no longer control the person or property, or earnings of her children. This was an action for labor and services. The plaintiff's mother

married the defendant when the plaintiff was about nine years old ; the plaintiff then went to live with defendant with his mother. He resided there until he was about seventeen years old ; he then left defendant and did not return. While he lived with defendant, he was treated, in all respects, as a member of his family—was clothed and schooled in the same manner as defendant's children were, and performed labor suitable for a person of his age and condition. There was no proof of any agreement or understanding that he was to recover wages and to account for his board, schooling and clothing, and no accounts were kept on either side. The only evidence on the subject of an understanding to pay was, that when the plaintiff and another brother were about leaving the defendant, the latter said 'he did not wish them to leave, and was willing to pay for what they had done.' It was a remark made by defendant in the presence of the plaintiff and his mother and other members of the family, but was not addressed to any one in particular. The court said there was no evidence in this case of any express promise to pay, and no proof that there was any expectation on either side, while the services were being performed, that payment was to be made or demanded. The remark proved to have been made by the defendant as the plaintiff was about leaving, ' that he did not wish him to leave, and was willing to pay for what he had done,' amounts to nothing more than the expression of a willingness on the defendant's part to pay the plaintiff for his services, if he would stay with him. It furnishes no evidence of any prior understanding or agreement, but, on the contrary, rather rebuts the presumption, as the remark was not particularly addressed to the plaintiff, and no question was raised or suggested by him about any pay. The case must, therefore, turn entirely upon the question, whether, under the circumstances of this case, the law will imply a promise on the part of the defendant. I think there can be no doubt that it will not. It is clear from this case, that the plaintiff lived with the defendant as a member of his family, in all respects, and was treated by the latter as one of

his own children ; that, although the defendant was not bound to provide for him, or furnish him with any support, and was not entitled by law to claim the plaintiff's services, if he had not chosen to render them, yet that he did, in fact, support and maintain him in his family, and as a member of it, and stood in *loco parentis* to him. The books are full of cases to show that, under such circumstances, the law will not imply a promise to pay for services thus rendered, or permit a recovery, unless an express promise is shown, or *something* to prove that such was the expectation on both sides. (Robinson v. Cushman, 2 Denio, 149 ; Andrus and wife v. Foster, 17 Vermont, 556 ; Fitch v. Peckham, 16 Verm. 150 ; Swires v. Parsons, 5 Watts & Searg. 357 ; Wiers v. Wiers' adm'r., 3 B. Monroe, 645 ; Candors' Appeal, 5 Watts & Searg. 513 ; Wills v. Dunn, Wright, 134.)" I have extracted very copiously from this case. One of the judges—Wells—dissented. The doctrine, however, of the majority was afterwards sustained by the court of appeals of New York, in a case precisely similar, brought by a brother of the plaintiff against the same defendant. (3 Comst. 312.) Wells, J., in his dissenting opinion, places his dissent upon the ground that the services were rendered during the minority of the plaintiff ; he admits that the doctrine of the majority of the court is sustained by the authorities referred to, but says, that in those cases, the services rendered were rendered by adults, who were competent to contract or to consent to any arrangement upon which the law would imply a contract or agreement to pay or not to pay for services rendered, or to waive, either in express terms or by implication, any legal right which would otherwise vest. In the case in Comstock, Pratt, J., in delivering the opinion of the court, said, that " the parent is not legally entitled to the custody or earnings of his children after they arrive at the age of twenty-one ; nor is he entitled to the earnings of or bound to maintain his nephews or nieces ; yet, if they live with him as members of his family, without any contract or understanding that he shall pay for their services, or receive pay for their maintenance, the law will not imply a promise to

pay on either side." He then states the doctrine laid down by Wells, J., in his dissentient opinion, and declares that he can not concur in the conclusion to which the learned judge arrived. He continues : " A contract or promise to pay, as a matter of fact, requires affirmative proof to establish it. Under certain circumstances, when one man labors for another, a presumption of fact will arise that the person for whom he labors is to pay the value of his services. It is a conclusion to which the mind readily comes, from a knowledge of the circumstances of the particular case, and the ordinary dealings between man and man; but when the services are rendered between members of the same family, no such presumption will arise. We find other motives than the desire of gain, which may prompt the exchange of mutual benefit between them, and hence, no right of action will accrue to either party, although the services or benefits received may be very valuable. This does not so much depend upon an implied contract that the services are to be gratuitous, as upon the absence of any contract or promise that a reward should be paid. So far, then, as it depends upon any presumption of fact, the difficulty is as great or greater in the case of an infant than an adult." It is said that the law will imply a promise, in many cases, even against the will of a person sought to be charged, when reason and justice dictate that he should pay. This is true. But the difficulty is, in applying this doctrine to the circumstances of the case now before us. Do the facts show that the plaintiff rendered valuable services to the defendant for years after he became of age, without any corresponding benefits received by plaintiff ? Is the calculation in dollars and cents the only consideration to be made in such cases ? Here the plaintiff is brought from Germany with his mother, when he was about sixteen or seventeen years old ; he lived with his step-father as one of the family ; he married and brought his wife into the same family, and continued to live as members of the family ; had two children, who were also treated as part of the same family. There are considerations growing out of the relation which the parties sus-

tain to each other which can not be computed in money. To say nothing of the benefits derived from a father's care and a mother's love, of the thousand joys which can only be found by the dutiful child in that sacred sanctuary called home, is it nothing to be trained up in those habits of industry and in that knowledge of business which fit a child for the actual duties of life?

In Swires v. Parsons, the plaintiff brought the action against the administrator of Isaac Parsons, deceased, to recover compensation for work, labor and service performed for the intestate in his life-time. The proof was that plaintiff had lived for many years with the intestate, and performed the labor and service as alleged, and the witnesses testified that she lived with him as his wife, and was reputed as such. The action was brought in the common pleas of Center county, Pennsylvania. The president of the court was of the opinion that the plaintiff could not recover, and directed a verdict and judgment for the defendants. Upon error in the Supreme Court, this judgment was affirmed. Rogers, J., in delivering the opinion of the court, remarked, "that the evidence establishes one of two things—either that the plaintiff and intestate were married, or that she was living in a state of concubinage. Either position is fatal to the claim for compensation, unless, in the latter case, there was superadded proof of a contract of hiring, of which there is not a shadow of evidence. Without this consideration, however meritorious her services may have been in one respect, the action can not be sustained. The action of assumpsit is founded on a contract either express or implied; and as an express contract is out of the question, the action must be sustained, if at all, on the implied promise. But this can not be; for if a man work for another merely with a view to a legacy, he can not afterwards resort to an action of implied assumpsit. In Osbourn v. The Governors of Guy's hospital, (2 Strange, 728,) where this principle was first ruled, it is said: 'The court must consider how it was understood by the parties at the time of doing the business, and the man who expects to be

Guenther v. Birkicht's Adm'r.

made amends by a legacy can not afterwards resort to an action.' It is enough for the plaintiff *prima facie* to show labor performed, to raise an implied assumpsit to pay for it. But the facts in evidence rebut the implication of a promise, which would otherwise arise; for the relation which they bore to each other is inconsistent with any understanding for compensation. It is a situation in which she voluntarily placed herself, and she must rely upon his bounty for support." (5 Watts & Sergt. 357.) In Andrus and wife v. Foster, (17 Verm. 556,) it appeared that the plaintiff's wife, being a niece of the defendant, and taken by him when she was a child to live with him until she became of age, was told by defendant, when she arrived of age, that she was free to go, if she chose; but that if she remained and did well, he would do well by her; she thereupon continued to reside with him for about six years as a member of the family, and was uniformly treated as she was before she became of age, neither party keeping any accounts. The plaintiff then left the defendant and went to New Hampshire, and continued to reside there, without any expectation of returning, for about five years, when, at the *request* of the defendant, she returned and worked for him and his family for about a year. It was held by the court that she was not entitled to recover compensation for her services during the time which elapsed after she became of age and before she went to New Hampshire, but that she was entitled to pay for her services rendered for defendant after she returned from New Hampshire. This case lays down the rule that when a daughter continues to reside in the family of her father after the age of majority the same as before, the law implies no obligation on the part of the father to pay for her services. The cases cited by the counsel for the plaintiff below, from Massachusetts Reports, do not militate against the doctrine of the cases from New York, Pennsylvania and Vermont. By the Massachusetts case of Freto v. Brown, (4 Mass. 675,) it is held, that a minor, whose father is dead, and whose mother afterwards marries, is entitled to his earnings in the service of a third person.

Guenther v. Birkicht's Adm'r.

The father-in-law may have an action on an implied assumpsit for necessaries, but can not claim his earnings against the minor's consent. Worcester and wife v. Marchant, (14 Pick. 510,) is to the same effect. As this case must go back to the Circuit Court, we would not be understood as laying down the law so as to require the plaintiff to produce proof of an *express* promise on the part of Birkicht to pay the plaintiff for his services after he became of age, or to produce proof of a *specific contract* for that purpose; but we say the burthen of proof is on the plaintiff to show, to the satisfaction of the jury, that such was the understanding of the parties. The merely performing work and labor, as a member of the family, after the plaintiff became of age, he having lived with his mother and step-father for a long time before and after that event as one of the family, and having been treated as one of the family, is not sufficient to raise the implied promise. But as the request made to the niece to return from New Hampshire and again live with the uncle, in the case from Vermont, and her compliance with such request, were considered as warranting the courts in raising an implied promise to pay for the work and services of the niece after her return,—so in this case, any facts which the plaintiff can offer, in order to show that it was the expectation or understanding, after he became of age, by the step-father and himself, that he was to be compensated for his work and labor, will be proper; and if such proof be sufficient to warrant the jury in coming to the conclusion that such was the understanding or the expectation of both parties, then the law will compel the administrator, Ewing, to pay to plaintiff the reasonable worth of such services under the circumstances.

The judgment of the Circuit Court is reversed and this cause remanded, to be proceeded in further, in accordance with the principles expressed in this opinion; Judge Leonard concurring; Judge Scott absent by reason of sickness.