JENNIE SHANNON, Respondent, v. F. M. CARTER, Admr., Appellant.

St. Louis Court of Appeals, February 17, 1903.

1. **Parent and Child:** SERVICES BY CHILD. Evidence in an action by a decedent's daughter to recover from his estate for services, examined, and held to warrant a finding that the services were rendered at the instance of the deceased, and upon his promise to pay.

2. ———: ———: INSTRUCTION: PRESUMPTION: PRACTICE; TRIAL. An instruction, in an action by a decedent's daughter to recover from his estate for services, that if plaintiff continued to reside with her parents after attaining her majority, and did work as before, the presumption is that the services were gratuitous, and that the burden was on her to rebut this presumption, is not in conflict with another instruction that ordinarily a contract to pay for services could be presumed but that a presumption might arise, under certain circumstances, that the services were gratuitous, and that in this case it was a question for the jury, taking into consideration the circumstances and the relationship of the parties, to determine if there was an implied contract between the parties.

3. ———: ———: ———. In a suit by decedent's daughter against his estate for services, an instruction that plaintiff could not recover unless she showed, by a preponderance of evidence, that the services were performed under an express or implied contract to pay for them, was proper.

4. ———: ———: ———: ———. Where in an action by a decedent's daughter for services, plaintiff's evidence showed that she came home at her father's request, and began work with the understanding that she was to receive compensation, it was not error to instruct that she could recover for services from the time she began work up to the death of her father.

Appeal from St. Francois Circuit Court.—*Hon. James D. Fox,* Judge.

AFFIRMED.

*Huff & Sleeth* for appellant.

The law presumes that services rendered by a daughter to a father are gratuitous. Louder v. Hart, 52 Mo. App. 377; Bittrick v. Gilmore, 53 Mo. App. 53; Penter v. Roberts, 51 Mo. App. 222; Erhart v. Dietrick, 118 Mo. 418; Ronsick v. Boverschmidt, 63 Mo. App. 421; Fuinell v. Gooch, 59 Mo. App. 209; Wood v. Land, 30 Mo. App. 176; Lawrence v. Bailey, 84 Mo. App. 107; Castle v. Edwards, 63 Mo. App. 568.

*W. H. Young* and *Pipkin & Swink* for respondent.

(1) There was sufficient testimony to overcome the presumption that the services rendered by plaintiff to her deceased father were rendered gratuitously. Hart v. Hart, 41 Mo. 441; Sprague v. Sea, 152 Mo. 327; Ronsiek v. Boverschmidt, Admr., 63 Mo. App. 421; Cowell v. Roberts, 79 Mo. 218. (2) Instruction No. 1 is an approved instruction and correctly declares the law. Hart v. Hart, supra; Sprague v. Sea, supra; State v. Sweeney, 54 Mo. App. 575.

GOODE, J.—This suit was instituted in the probate court of St. Francois county on an account reading as follows:

"The estate of John C. Shannon, deceased, to Jennie M. Shannon, Dr.

To 832 weeks' work at $1.75 per week, at the
    instance and request of deceased...... $1,456.00
Credit for clothing at fifty cents per week
    for 832 weeks...................... 416.00
To balance due claimant................. $1,040.00
Commencing April 27, 1884, and ending April 14, 1901."

To this account there was attached an affidavit of

the claimant sworn to before her attorney as notary public.

In the probate court before a jury the plaintiff recovered a judgment for $600 which was afterwards allowed by said court and classified.

An appeal was taken from the probate court to the circuit court where, on a trial *de novo* before a jury, a verdict was rendered in plaintiff's favor for $1,044. Judgment was entered accordingly and an appeal taken to this court.

While there were many witnesses on either side, the evidence for the respective parties may be summarized as follows: The testimony of the plaintiff tended to prove that from April, 1884, until her father died in April, 1891, she was the mainstay of her father's household, doing the domestic work, such as cooking, ironing, keeping the house in order, and occasionally doing outside work, such as feeding the stock.

At an uncertain date, some time about 1882, she gave up her school to go home to take charge of the housework at the request of her father and mother, her mother being an old woman and not able to do much and her father an old man. She had a brother (Frank) who, it seems, from some mental weakness was almost helpless and quite a burden on the family. There were a great many hands on the place at times and the domestic work was onerous. If the witnesses for the plaintiff are to be believed, and several of them were her brothers and sisters, the brunt of that work fell on her and she performed nearly all of it. There was testimony, too, that her father made statements on several occasions that she would be rewarded for it, and also testimony that he said in her presence that she should be remunerated, although no stipulated compensation was proven. The evidence was that such work as plaintiff performed was worth, in that community, about two dollars a week.

The evidence for the estate tended to show that the plaintiff did only her part of the work around her father's house and farm, that the family was a large one, there being many children and all of them being reared to work. The other girls married and left home, after which, of course, the household duties fell more to the lot of plaintiff. The evidence for the defense tends also to show that plaintiff was often away from home on long visits which extended over months; that she did not stop teaching school to resume domestic work in her father's household, but taught until the school closed; and, generally, the evidence for the estate was that the duties performed by the plaintiff were those that a daughter still living at home after she had reached her majority, would perform without expectation of other compensation than her living.

No points are made in regard to the testimony.

For the plaintiff the court instructed the jury that where services are rendered, a contract or obligation to pay will be presumed; but that a presumption may arise from the relationship of the parties that the services were acts of gratuitous kindness; that in this case it was a question for the jury, taking into consideration all the circumstances, including the nature of the relationship of the plaintiff to her deceased father and her condition in life, to determine whether there was an implied contract to compensate plaintiff for her services or not; and if the jury found from the evidence plaintiff rendered services for her father in attending to his business and about his residence and that it was understood between them plaintiff should receive pay for such services, the jury should find the issues for the plaintiff and allow her such sum as they might believe from the evidence she was entitled to, not exceeding $1.75 a week, with interest thereon at six per cent from the date of the filing of the claim.

The court further instructed the jury that if they

found the issues under the foregoing instruction for the plaintiff then in ascertaining what compensation to allow her, they should confine the compensation for services to such as they might find were rendered to her deceased father between April 27, 1884, and April, 14, 1901.

The defendant requested an instruction that plaintiff could not recover under the evidence. Also the following:

"2.    The court  further  instructs the jury that where the daughter has continued to live with her parents after arriving at majority and continues to labor as before, the law presumes such services to be gratuitous and there rests a burden on the claimant in this case to overthrow such presumption by a preponderance of testimony; and further the court looks upon claims of this character with disfavor, and to prove such a contract, the evidence must be clear and convincing, and the jury must believe from the evidence that there was at the time the services were rendered an expectation on the part of the plaintiff to receive pay for such services and on the part of the deceased to pay for the same."

The court refused both of those but gave the following of its own motion in lieu of the second one:

"3.    The court further instructs the jury that if the plaintiff in this case continued to live with her parents after arriving at her majority, and continued to labor as before, the law then presumes such service to be gratuitous and the burden of rebutting such presumption by a preponderance of testimony rests on the plaintiff and before you will be authorized in finding a verdict for the plaintiff you must believe and find from the evidence in this case that there was at the time the service were rendered an expectation on the part of the plaintiff to receive pay for such service and on the part of John C. Shannon to pay for the same.

"4.    The court instructs the jury that the law

in this case is that the ordinary presumption of contract for valuable services rendered does not obtain, and the plaintiff can not recover in this case unless she shows by a greater weight of testimony that the services sued for were performed under and by virtue of a contract, either express or implied.''

The main errors assigned are in respect to the instructions, and the defendant contends, first, that there was no evidence to support the verdict, and, second, if there was, there were inaccurate charges given to the jury..

The error assigned in regard to the insufficiency of the evidence merits no attention whatever; for witness after witness swore the services rendered by plaintiff extended throughout many years, were rendered at the instance of her father and that he promised to pay for them.

As to the first instruction given for the plaintiff, it is copied from one approved and commended by the Supreme Court in a similar litigation. Sprague v. See, 152 Mo. 327.

The third instruction given by the court of its own motion, is conceded by defendant to be correct, but said to be in conflict with the first one given for the plaintiff, in that the latter declares the law presumed the services were to be paid for, which presumption may be rebutted by circumstances, such as relationship of the parties; while the other declares the services are presumed to be gratuitous. We see no conflict in those two instructions at all. The first one was general in its opening clauses and, as has been seen, told the jury in approved words, that *ordinarily* where services were rendered, a contract or obligation to pay would be presumed; but that a presumption might arise in certain circumstances, that the services were gratuitous. The instruction then proceeded to inform the jury that in this particular case it was a question for them, taking into consideration all the circumstances,

including the relationship of the parties, to determine. whether or not there was an implied contract for compensation.

The third instruction hypothecated the defendant's theory to-wit, that the plaintiff simply continued to reside with her father after arriving at her majority and continued her labors as before, and told the jury that in that case, the law presumed whatever services she rendered were given gratuitously; that the burden was on her to rebut said presumption by a preponderance of the evidence, and that before the jury would be justified in awarding her a verdict, they must find from the evidence she rendered the services with an expectation of payment. That was a correct instruction on the defendant's theory of the case.

Plaintiff's testimony tended to show that, instead of remaining at home after she reached her majority and continuing her labors as before, she left home and was called back by her father and mother, induced to give up another employment and, at their request, remained with them and assisted them.

The fourth instruction given by the court of its own motion, must have freed the jury from any doubt as to the legal presumption in this case; for it distinctly told them that the usual presumption of a contract to pay for valuable services did not obtain, and that the plaintiff could not recover unless she showed, by the greater weight of the testimony, the services sued for were performed under and by virtue of a contract, express or implied.

As to the measure of plaintiff's recovery, the effect of the instructions was that plaintiff could only recover for such services as she rendered under a contract express or implied, which recovery must be limited to the time between April 27, 1884, when she began the services, and April 14, 1901, when her father died.

The complaint of appellant in regard to the meas-

ure of damages is that the jury were not advised to confine the damages awarded to compensation for such work as was performed after a contract or understanding was made between plaintiff and her father. This objection is untenable; because if the evidence for the plaintiff was true, as the jury must have believed it to be, she began to work with the understanding that she should receive compensation, in April, 1884. The effect of defendant's evidence was, of course, that she was rendering free services and that there was no understanding at all in regard to compensation.

This case seems to have been carefully instructed and, as the evidence was sufficient to warrant the verdict, the judgment is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.