FITZPATRICK, Respondent, v. DOOLEY, Appellant.

St. Louis Court of Appeals, April 4, 1905.

1. IMPLIED CONTRACT: Gratuitous Services. A promise to pay for services is presumed from their acceptance unless the relation of the parties is such that the services are presumed to have been rendered gratuitously.

2. ———: ———: Members of Family. The family relationship of parties, one of whom renders services to another, may be such, as in the case of parent and child or of those living as one family, that it raises the presumption of gratuity, and, in order to recover for such services, an agreement for compensation must be shown either by direct testimony or circumstances.

3. ——: ——. Where one enters a household as a member of the family while a minor and remains after attaining his majority, there is no presumption that he is to be paid for his subsequent work.

4. ——: ——: **Burden of Proof.** Where a girl fifteen years of age went to live with a family to whom she was not related and continued to live with them after she became of age, in an action for services rendered while there, whether the family relation existed between the parties, so as to raise the presumption that the services were gratuitous, was a question for the jury and the burden was on the defendant to prove such relationship; if the relationship was found, the burden was on the plaintiff to show an agreement for compensation.

5. ——: ——: **Credit for Clothes.** Clothing is not an ordinary incident of domestic services and if the plaintiff, in such case, was clothed while rendering services for which she sues, credit should be given for their value.

Appeal from Monroe Circuit Court.—*Hon. David H. Eby,* Judge.

REVERSED AND REMANDED (*with directions*).

*James P. Boyd* and *W. T. Ragland* for appellant.

*Jas. H. Whitecotton* and *Thomas P. Bashaw* for respondent.

But the true rule and the one on which the foregoing instruction is based is that where work is done by one person and for another and accepted by him the law will imply a contract to pay the reasonable value of such services. This is familiar law. 8 Waits Ac. & Def., 719; Sprague v. Sea, 152 Mo. 327, 53 S. W. 1074; Sidway v. Mo. L. & L. Co., 163 Mo. 386, 63 S. W. 834.

GOODE, J.—This is an action to recover compensation for services rendered by the respondent as a servant in the family of the appellant. The services consisted of washing, ironing, cooking, housecleaning, milking, churning and such other duties as are incident to domestic work around the home of a farmer. The respondent went to dwell in the appellant's family in

June, 1885, when she was fifteen years old. She remained there until March 20, 1890, a period of about five years, and extending two years beyond her majority. The petition contains two paragraphs. The first declared on an implied promise to pay the respondent the reasonable value of her services, stating their value at $825 and allowing three small credits, amounting to $8.35 for pasturing a mare, leaving the balance due $816.65. The second paragraph counts on an express contract by which, as alleged, appellant agreed to pay respondent $500 for her services; the same credits are allowed in this paragraph as in the first one and the balance stated is $491.65.

The defense pleaded to the first count of the petition is that at the request of respondent's mother appellant took respondent, when fifteen years old, into his house to live as a member of his family and she remained there pursuant to that arrangement until 1890, receiving board, clothing and education and treatment as a member of the family. The defense to the second paragraph was a general denial. In addition to those defenses the Statute of Limitations was pleaded against both causes of action.

The testimony for the respondent conduces to show that when fifteen years old she entered appellant's household and from that time, through five years or more, did domestic work of the character mentioned. She received her board and clothing from the appellant, but positively denied that, to her knowledge, her mother placed her in his home to be raised and get only board and clothing for the work she would do. Her testimony was that prior to 1887, the year when she asserts an express contract was made about her compensation, no certain amount of wages for her labor had been agreed on, but that she never understood she was staying with the family as one of it and for no wages. She swore she spoke to the appellant in 1887 on the subject, telling him she could no longer continue under the ex-

isting arrangement; whereupon he agreed to give her $500 when she married. This sum she said she demanded of him several times after her marriage but he refused payment, asserting he owed her nothing. The testimony for the appellant supports the statement of the answer that respondent's mother made an arrangement with the appellant to give respondent a home, furnish her board and clothing and treat her as a member of the family; that this arrangement was carried out and determined the status of respondent in the household until she left in 1890, subsequent to her marriage. Appellant denied the alleged agreement to pay respondent $500 when she married and swore the only agreement ever made was the one with her mother. The court gave an instruction to the jury regarding the cause of action contained in the second paragraph of the petition and based on an alleged express promise to pay respondent $500 at her marriage. It is unnecessary to notice that instruction. The jury found the issues for the appellant on the cause of action to which it referred and, therefore, he had no cause to complain of the charge and has not complained. The following instruction was given in reference to the case stated in the first paragraph of the petition which counted on the reasonable value of the appellant's services:

"The court instructs the jury that if they find from the greater weight of the evidence in the cause that at the time plaintiff became of age she was then, and thereafter continued for any length of time in the employ of defendant as his housekeeper, or house-servant, and discharged her duties in that behalf to the satisfaction of defendant, and if the jury do not find that there was an express contract, understanding or agreement between plaintiff and defendant after she became of age, as to what wages, compensation or remuneration should be paid or given plaintiff for such services, if any, after she became of age, then your verdict under the first count should be for the plaintiff and in such sum as the

jury may find from the evidence her said work and services, if any, after she became of age, were reasonably worth; provided the jury further find from the evidence in the case, that the credits given by plaintiff, on her account, were given with the knowledge and consent of defendant at the time they were severally given, as referred to in plaintiff's instruction No. 1."

The jury returned a verdict for the respondent in the sum of $150.65 on the first paragraph of the petition. The quoted instruction authorized no judgment *quantum meruit* for the respondent's services while she was a minor; but made her right to recover for those services depend on satisfying the jury that the appellant expressly agreed to pay her a certain sum when she married. Probably the reason for this ruling was that, in the opinion of the court, respondent's mother was entitled to her earnings while a minor unless there was a positive arrangement by which respondent herself should be paid. In truth the evidence permits only two conclusions regarding respondent's compensation for work done while a minor. One is that she was to get nothing except a home and maintenance and the other that, by virtue of the alleged promise, she was to get $500. The jury having found there was no such promise, could not return a verdict in respondent's favor for services rendered while under age. The jury awarded compensation for the reasonable value of her services during the two years after she was of full age, and the question for decision on this appeal is concerning the soundness of the instruction of the court under which the reward was made. The court instructed that if the jury found respondent remained in the appellant's employ as housekeeper and servant and discharged her duties to his satisfaction after she was of full age, and there was no express contract, understanding or agreement between them after she became of age, regarding remuneration for services rendered after that time, the verdict should be in her favor for such sum as those ser-

vices were reasonably worth. Appellant's counsel say the jury should have been instructed that if they found the respondent had been residing and working in the family from the time she was fifteen years old and continued to reside and work therein after she became of age, the law presumed she did so on the same terms as before, and it devolved on her to overcome the presumption and show there was an express or implied contract for compensation. The instruction the court gave contained no allusion to the possibility of respondent's having been a member of appellant's family and, like other members, having performed the tasks incident to her situation in consideration of support only and without expecting wages. We find evidence in the record to prove those were the facts; and, in truth, there was no evidence to the contrary except respondent's own testimony that, from the first, she expected remuneration besides her support and was promised it later. We suppose the trial court conceived that if the original arrangement was of the nature appellant contended, having been made with respondent's mother instead of her, it expired when she reached her majority, and as the appellant continued to accept her work, the law implied a promise to pay for it. As has been said in numberless cases, such a promise is presumed from the acceptance of beneficial labor unless the relationship of the parties concerned forbids the presumption. If there is no exceptional relationship in the way, the promise is raised because natural equity calls for compensation for beneficial services and experience proves that usually compensation is both expected and paid. But these reasons fail when the controversy is between members of a family. It is taken for granted such persons are interested in the common welfare and influenced by their interest and affection to promote it. Such is the customary course of conduct of those inmates of a household who enjoy the status of members of a family. They co-operate in carrying on the work of the family,

expecting from the head of it maintenance and education suitable to their degree in life, but no wages. The status of children as members of the family does not always end when they become of age. On the contrary they are still regarded and treated as members as long as they remain in the home, and especially is this true of girls. As said above, if the parties to the controversy are parent and child, the presumption is that the child's services to the parent were rendered gratuitously; and so the law seems to be if a child takes care of an aged parent. Greenwell v. Greenwell, 28 Kan. 675. The same rule applies in cases of claims by adopted and stepchildren against those who have stood in *loco parentis* to them. Guenther v. Birkicht's Admr., 22 Mo. 439. Though the parental relationship is absent, nevertheless, there may be a family relation which creates the presumption of gratuity. Morris v. Barnes' Admr., 35 Mo. 412; Snyder v. Free, 114 Mo. 361, 371, 21 S. W. 847. Ties growing out of either consanguinity or marriage are factors bearing, with more or less weight according to their degree, on the inquiry of whether or not a family relation existed. Whaley v. Peak, 49 Mo. 80, 83; Callahan v. Riggins, 43 Mo. App. 130, 138. Just when a family or parental relation exists and interferes with the usual presumption of a promise to pay for accepted work, is not fixed by legal rules governing every case. The kinship may be so close, as in the instance of parent and child, that there is no presumption of a promise. Kostuba v. Miller, 137 Mo. 161, 38 S. W. 946; Shannon v. Carter, 99 Mo. App. 134, 72 S. W. 495. Sometimes it may be so remote that the case stands as if it were between two strangers and a promise to pay for services is presumed. Sprague v. Sea, 152 Mo. 327, 53 S. W. 1074. Sometimes the circumstances make it a question for the jury to decide whether the serving and the served party occupied a family relationship. Smith v. Myer, 19 Mo. 433. Regarded from a practical standpoint, the important inquiry relates to where the bur-

den of proof falls in these cases. If the relation of the parties is such that a presumption to pay arises from the mere acceptance of beneficial work, the defendant has the burden of overcoming the presumption by proof that the work was done gratuitously or for support and maintenance merely. If a family or parental relationship existed, the burden is on the claimant to show an agreement to compensate for his work. If the existence of such relationship does not conclusively appear from closeness of kinship, the party asserting the status must prove it. When parties are related neither by blood or marriage, the circumstances may be such as to prevent the presumption of a promise to pay for valuable services rendered by the one to the other. This occurs when a person is taken into a family by adoption or from motives of benevolence and charity. Smith v. Myers, supra; Tyler v. Burrington, 39 Wis. 376; Bennett v. Stephens, 8 Oregon 444. The fact first to be ascertained in litigation like this is whether a parental or family relation existed; and this, as indicated above, may be either a court or a jury matter—a question of fact or law—according to the circumstances. That fact being found, the burden of proof rests accordingly. If a family or parental relationship began while the claimant for wages was a minor and, after attaining his majority, he remained in the household and went on with his work as before, there is no presumption that he was to receive wages for the subsequent work; but the burden devolves on the claimant to prove an agreement to pay him, either by direct testimony or by circumstances justifying the inference that it was understood he was to be paid. In some jurisdictions nothing less than proof of an express agreement will be accepted as the basis of a judgment for compensation. But in this State the agreement may be deduced from circumstances. Cowell v. Roberts, 79 Mo. 218; Hart v. Hart's Admr., 41 Mo. 441, 443; Guenther v. Birkicht's Admr., 22 Mo. 439. Though there must be an

actual agreement, established either directly or inferentially, it is not essential that it should have been put into words; but it is essential that there should have occurred what the name implies; namely, a meeting of the minds of the parties on the subject of compensation —a common understanding about it. It is important to distinguish between the nature of the promise to pay for beneficial services which the law implies from their acceptance, and the agreement to pay inferred from facts showing one party expected payment and the other expected to pay. Some confusion has been introduced into the decisions by a loose use of the phrase "implied promise," which is employed to signify both the promise the law presumes and the one a jury is justified in inferring from facts when there is no direct proof on the question. The so-called implied promise is, in truth, no contract at all, except by legal fiction. It is a disputable legal presumption, raised on considerations of equity and custom. The benefited party may have had no intention to pay; yet if he requested the work, or permitted it to be done for him, an agreement to pay will be presumed unless there is proof that it was done gratuitously. But when a peculiar relationship exists such as we have been discussing, the right to remuneration hinges on whether or not there was an understanding that the services were to be rewarded—an understanding which may be established by direct testimony or gleaned from the facts.

If we apply the foregoing rules to the evidence in the present case, it is plain the instruction we have quoted, unqualified as it was by any other charge, was erroneous. It left entirely to one side the testimony conducing to prove the respondent was given a home in appellant's family while a minor, with the understanding that she was to be supported and treated as one of the family but receive no wages. It is true there was evidence to show that even if the appellant never promised to pay her $500 when she married, she was,

from the first, a hired servant and treated as such. The conclusion may be deduced that she was a servant whose agreed compensation was board, clothing and shelter and that she never was received nor regarded as one of the family. For aught that appears she was not educated. If, in truth, she was regarded as a servant working for her board, clothing and shelter, the arrangement was made with her mother and not with her, and expired with her minority; and, in the absence of proof to the contrary, the law will imply a promise to pay for subsequent work which redounded to the benefit of the appellant and was accepted by him. If she was in the household as a member of the family prior to her majority, no promise will be implied that she was to be paid wages for the period she remained subsequently. We have cited cases above which hold the family relationship may exist when there is no kinship, and be attended by the legal incident of lack of presumption of a promise to pay for work done. In Smith v. Myers, 19 Mo. 433, it was said that if a destitute person is received from charity, provided with necessaries and set to work, he is under no obligation to remain and has no claim for wages. The case of Tyler v. Burrington, 39 Wis. 376, is almost exactly like this one. That claimant, while a girl of fourteen, had entered the family of the deceased to whom she was no kin, and worked as servants usuallly do for ten years or more, receiving her support and education. The testimony showed her services were valuable and that the deceased had expressed appreciation of them to others and as intention to remunerate her. The evidence for the defense tended to show the claimant had been received into the family and treated as a child. The contradictory evidence was ruled to present a question for the jury regarding the relation in which the claimant entered the home of the deceased and that if she did so as a servant, there was an implied contract to pay her wages; but if as a child, there was no such

implication, but she must prove an actual contract in order to recover. The opinion says:

"When, without express contract, an infant is indefinitely taken into a family not akin to it, the surrounding circumstances must give construction to the act, and determine whether the infant is so taken as a visitor, or as a servant for wages to be earned by it, or as a boarder or pupil for nurture or tuition for compensation to the head of the family, or as a child adopted by the family in the relation of a child by blood, or in some other peculiar relation. In the absence of proof of surrounding circumstances from which a contract can be implied, it is not the province of the law to impose one upon the parties."

In Bennett v. Stephens, 8 Oregon 444, an instruction was approved which declared the proposition that if a poor person is taken out of charity, provided with food, lodging, clothes and necessities and set to work, no contract for hiring is implied, however long the party may continue. That was an action for wages by a girl who entered the defendant's home when seventeen years old.

The question of whether the family relation existed between these parties is for the jury to decide on all the facts before them and it devolves on the appellant to establish the relation by the weight of evidence. If it is found to have existed, the burden will fall on the respondent to establish that after she became of age there was an agreement or understanding that she should henceforth be remunerated; otherwise the burden is on the appellant to prove her work was gratuitous. Even if there was a family relationship, she is entitled to compensation for work done after she reached her majority, provided the facts in evidence warrant the inference that compensation was thereafter intended and expected. Too much is said about the presumptions of the law in charging juries in this class of cases. The advice the jury needs is in regard to what facts they

must find and the burden of proof.   The relevant legal presumptions serve as guides to the court in instructing as to who has the burden of proof on the respective issues.   In this case there was no contention that any agreement was made regarding compensation to respondent for work after she became of age, except the alleged promise to pay her $500, which the jury found never was given.   Neither was any agreement by which she was to work for nothing after her majority, relied on by the appellant. Hence the decision of her claim to be remunerated *quantum meruit*, depended exclusively on whether or not she was previously a member of the family.   The jury should have been advised, in substance, that if it found she was a member of the family while a minor, the verdict should be for the defendant on the first paragraph of the petition; otherwise for plaintiff for the reasonable value of her services.   Of course the evidence on a second trial may present new facts.

One suggestion ought to be made.   The respondent admits appellant furnished her with clothes and food after she reached her majority.   Board is an ordinary incident of domestic service when a servant is paid wages, but clothes are not.   If respondent is to recover wages for what she did when of full age, the value of the clothing she was supplied with by the appellant ought to be taken out in assessing her damages.

The judgment is reversed and the cause remanded with a direction to retry the issues on the first paragraph of the petition.   After verdict thereon the judgment will follow the findings on the two paragraphs, All concur.