MATILDA KINGSTON, Respondent, v. GEORGE ROBERTS, Administrator, Appellant.

**St. Louis Court of Appeals, June 3, 1913.**

1. **PARENT AND CHILD: Services Rendered by Stepchild: Presumption.** In an action by a stepdaughter against the estate of her deceased stepfather, evidence that, after the death of plaintiff's mother, decedent continued to live with plaintiff's family *held* to show that the family relation existed between plaintiff and decedent.

2. **DOMESTIC RELATIONS: Services Rendered: Presumption.** Where the family relation exists, the law does not imply a promise to pay for services rendered, or maintenance provided by one member for another, but, on the contrary, the presumption is, subject, however, to rebuttal, that such services are rendered, or such maintenance is provided, gratuitously.

3. ———: ———: **Evidence.** The rebuttable presumption, that services rendered or maintenance provided by one member of a family for another were rendered or provided gratuitously, cannot be overcome by the loose declaration of the person benefited, made to neighbors or friends, expressing appreciation, gratitude, etc,. but, in order to recover, it devolves upon the claimant to show, either by direct testimony, or by facts and circumstances justifying the inference, that the services rendered or the support and maintenance provided, were to be paid for.

4. **PARENT AND CHILD: Services Rendered by Stepchild: Sufficiency of Evidence.** In an action by a stepdaughter against the estate of her deceased stepfather for the value of board furnished the stepfather, a physician who had frequently visited plaintiff's home in a professional capacity during the time decedent was staying there testified that he had had several conversations with decedent in regard to his staying at plaintiff's home, and that decedent said he was going to pay plaintiff. He further testified that plaintiff had asked him to use his influence with decedent to get him to pay her. *Held*, that notwithstanding the family relation existed between plaintiff and decedent, this witness' testimony, in connection with other facts and circumstances in evidence, was sufficient to justify an inference that there was a mutual agreement or understanding between plaintiff and decedent that the support and maintenance provided the latter were to be paid for, thereby rebutting the presumption that the support and maintenance were gratuitously furnished; and hence it is *held* that the case was one for the jury.

5. **TRIAL PRACTICE: Credibility of Witnesses.** The weight to be given to the testimony of witnesses and the determination of their credibility rests entirely with the jury.

6. **PARENT AND CHILD: Action by Stepdaughter for Services: Instructions.** In an action by a stepdaughter against the estate of her deceased stepfather for the value of board furnished the stepfather, where it was not shown that decedent had rendered plaintiff services of any consequence while he was staying at her house, nor that any services rendered were rendered in compensation for his board, nor that he furnished provisions or paid bills for plaintiff in compensation for his board, it was proper to refuse an instruction requested by decedent's administrator, to the effect that even though plaintiff rendered valua-

ble services, with the intention and understanding with decedent that she would be paid therefor, yet if decedent rendered plaintiff valuable services, furnished provisions and paid bills for plaintiff in an amount equal to the services rendered by plaintiff and as a remuneration therefor, plaintiff was not entitled to recover.

7. INSTRUCTIONS: Refusal: Not Based on Evidence. An in-
.struction which is not supported by any evidence is properly refused.

8. PARENT AND CHILD: Action by Stepdaughter for Services: Presumption: Instructions. In an action by a stepdaughter against the estate of her deceased stepfather for the value of board furnished the stepfather, where plaintiff relied on inferential evidenc to establish that there was an understanding between the parties that plaintiff was to charge and decedent was to pay for his board, an instruction that plaintiff could not recover except upon proof of an express contract between plaintiff and decedent was properly refused, for the reason that it would have been misleading, in view of the fact that it was not necessary to prove the making of a contract in so many words, but it was sufficient if the evidence and circumstances in evidence justified an inference that there was a meeting of the minds and a contractual understanding and intention between the parties.

9. WITNESSES: Interest in Litigation: Evidence: Trial Practice: Cross-Examination. It was error for the court to exclude as immaterial a question propounded to plaintiff's principal witness on cross-examination, as to whether he had been paid for services rendered her as a physician, since, for the purpose of testing the credibility of a witness, it is permissible, on. cross-examination, to interrogate him regarding his situation with respect to the parties and to the subject of litigation, and regarding his interest, motives, inclinations, etc.

10. TRIAL PRACTICE: Cross-Examination: Limitation: Appellate Practice. While the appellate court does not ordinarily review the action of the trial court in the exercise of its. discretion in limiting the cross-examination of a witness, nevertheless the right of cross-examination must not be unduly restricted, and if such examination is arbitrarily limited, while being conducted in a proper manner, it is error.

11. APPELLATE PRACTICE: Exclusion of Evidence: Harmless Error. The erroneous exclusion of a question propounded to plaintiff's principal witness on cross-examination, as to whether he had been paid for services rendered plaintiff as a physician, was not reversible error, under Sec. 2082, R. S. 1909, in view of the fact that other questions asked on cross-examination, for the purpose of testing his credibility and showing his motive in testifying as he did, were permitted, and the right of cross-examination was not otherwise restricted.

Appeal from Pike Circuit Court.—*Hon. B. H. Dyer*, Judge.

AFFIRMED.

*James E. Pew* and *Robert A. May* for appellant.

The law implies no promise to pay for services rendered one member of a family by another, and services rendered merely on behalf of a mother by her daughter or the latter's husband, in the absence of a prior promise of payment, will not constitute a valuable consideration, etc. Snyder v. Free, 114 Mo. 360; Ronsiek v. Boverschmidt, 63 Mo. App. 421. When courts say an express contract must be shown in cases like this, they mean the law will not imply a contract if the family relation existed and do not mean that the express contract must be proved by direct testimony. Nevertheless, it must be expressed, either by words or unequivocal acts—this goes to the manner of proof, not to the existence of such contract. Cole v. Fitzgerrald, 132 Mo. App. 24. The following cases show that the relation of stepfather and stepchild is the same as parent and child. Fitzpatrick v. Dooley, 112 Mo. App. 171; Guenther v. Birticht's Admr., 22 Mo. 439.

*Pearson & Pearson* for respondent.

As to how the family relations, if any, existed; what the intentions of the parties were, with reference to paying for services rendered—were all questions for the jury under proper instructions. Birch v. Birch, 112 Mo. App. 157; Brand v. Ray, 156 Mo. App. 622.

ALLEN, J.—This action was begun in the probate court of Pike county by plaintiff, respondent here, exhibiting the following demand against the estate of

Fred Roberts, deceased, to-wit: "To boarding, nursing, darning, mending, washing, ironing and taking care of Fred Roberts, deceased, for five years prior to his death, to-wit, March 29, 1910, at $4.50 per week, $1060. To last three weeks' illness at $10 per week, $30. Total, $1090." Upon appeal from the probate court, the cause was tried *de novo* in the circuit court of Pike county, before the court and a jury, resulting in a verdict for plaintiff for $1060. Judgment was entered accordingly, from which the defendant administrator has appealed to this court.

Plaintiff, Mrs. Matilda Kingston, is a stepdaughter of deceased, who married her mother many years prior to the period of time here involved. Plaintiff's mother died some fifteen years before this action was begun, but during her life, after her marriage to deceased, she, deceased and plaintiff lived together as one family in a house belonging to the mother, in Louisiana, Missouri. After the mother's death, plaintiff, who inherited the home, and the decased continued to live together in this house. The evidence shows that plaintiff treated the deceased as though he were her own father, and that he in turn seemed to have a fatherly regard and affection for her. The deceased was a cabinetmaker by trade, had a little carpenter shop, and did little "odd jobs" of carpentering. He owned a house from which he received rents, and also drew a pension.

In support of plaintiff's claim, one D. M. Pearson, a physician, testified that he knew deceased during his lifetime, and also the plaintiff, Mrs. Kingston; that he was the plaintiff's physician for about ten years; that deceased lived with plaintiff for some ten or twelve years prior to his death; that the witness had been at plaintiff's home quite frequently, and that deceased ate and slept there and made his home with plaintiff; that the witness had had several conversations with deceased in regard to his staying there with

plaintiff; that plaintiff complained to him about "Mr. Roberts not helping her and not making money," and that he had tried to have deceased turn over to the plaintiff the property from which deceased drew rents so as to help plaintiff financially, and that deceased promised so to do; that the latter "claimed that he was going to pay her. He said, '*I am going to pay her*,' but he always claimed he was hard up. And Mrs. Kingston asked me to use my influence *to get him to pay her*."

It does not appear from the the evidence that deceased paid plaintiff any board. There is some evidence to the effect that he sometimes purchased supplies for the house; and, on the other hand, there is evidence tending to show that such purchases were made with money supplied by plaintiff, or that such supplies were purchased upon plaintiff's credit.

We need say nothing as to the testimony concerning plaintiff's claim for "nursing, darning, mending, washing, ironing, and taking care of" deceased, as the court by its instructions withdrew from the consideration of the jury everything except plaintiff's claim for board.

There is some testimony to the effect that deceased helped plaintiff with certain household work, but there is other testimony that he was not at home a great deal. It appears that deceased was quite fond of beer, sometimes drank to excess, and frequently remained out late at night, rising very late the next morning. There is considerable testimony in the record to the effect that plaintiff made various efforts to have the deceased convey to her the property which he owned, or devise it to her by will.

At the close of plaintiff's case defendant offered a peremptory instruction in the nature of a demurrer to the evidence, which was refused by the court, and at the close of all of the evidence a like instruction offered by defendant was likewise refused. And it is

earnestly insisted by appellant that plaintiff failed to make a case entitling her to go to the jury, and that the demurrer to the evidence should have been sustained.

I. That the family relation existed between plaintiff and deceased is, under the evidence, beyond all dispute. And where such relation exists it is well established that the law implies no promise to pay for services rendered by one member of the family to another, or for maintenance provided by one member thereof for another. On the contrary, the presumption is, that such services are rendered, or such maintenance is provided, gratuitously. In Hartley et al. v. Estate of Hartley, 173 Mo. App. 18, 155 S. W. 1099, the court speaking through NORTONI, J., said:

"Ordinarily, among strangers, where one renders valuable services to another, which he receives and appropriates, the law presumes they are to be compensated; but where the close family relation appears, as here, this presumption does not obtain. Indeed, in such cases, the presumption goes to the effect that the services so rendered are gratuitous, and that the member of the family performing them does not expect to charge therefor, nor the parent intend to pay. This presumption affects the matter solely as to the burden of proof, for it operates to cast the onus of repelling it upon plaintiff. [See Fitzpatrick v. Dooley, 112 Mo. App. 165, 86 S. W. 719; Kostuba v. Miller, 137 Mo. 161, 38 S. W. 946. See, also, Wagner v. Edison Elect. Illuminating Co., etc., 141 Mo. App. 51, 121 S. W. 329.]"

As appears from the portion of the opinion quoted above, the rule that there is no implied agreement for compensation for services between persons in domestic relations, living together as members of a family, means merely that prima facie such presumption obtains. In the absence of any evidence, such services

are presumed to be gratuitous. The presumption is rebuttable; it being for the party alleging that such services were not gratuitous to establish that fact. It must be conceded also that, under such circumstances, loose declarations of the person benefited, made to neighbors or friends, expressing appreciation, gratitude, etc., are insufficient to overcome the presumption and justify the finding of an intention to pay. It devolves upon the claimant to show, either by direct testimony, or by facts and circumstances justifying the inference, that the services rendered, or the support and maintenance furnished, were to be paid for.

This subject has been so thoroughly discussed and considered by our courts that it is only necessary to direct attention to some of the more recent decisions involving this question.

In Fitzpatrick v. Dooley, 112 Mo. App. 165, 86 S. W. 719, a case of this character, this court, speaking through GOODE, J., said: "The burden devolves on the claimant to prove an agreement to pay him, either by direct testimony or by circumstances justifying the inference that it was understood he was to be paid. In some jurisdictions nothing less than proof of an express agreement will be accepted as the basis of a judgment for compensation. But in this State the agreement may be deduced from circumstances. [Cowell v. Roberts, 79 Mo. 218; Hart v. Hart, 41 Mo. 441, 443; Guenther v. Birkicht's Ad'mr, 22 Mo. 439.] Though there must be an actual agreement, established either directly or inferentially, it is not essential that it should have been put into words; but it is essential that there should have occurred what the name implies, namely, a meeting of the minds of the parties on the subject of compensation—a common understanding about it. It is important to distinguish between the nature of the promise to pay for beneficial services which the law implies from their acceptance and the agreement to pay inferred from facts showing one

party expected payment and the other expected to pay.
Some confusion has been introduced into the decisions
by a loose use of the phrase "implied promise," which
is employed to signify both the promise the law pre-
sumes and the one a jury is justified in inferring from
facts when there is no direct proof on the question.
The so-called implied promise is, in truth, no contract
at all, except by legal fiction. It is a disputable legal
presumption, raised on considerations of equity and
custom. The benefited party may have had no inten-
tion to pay, yet if he requested the work, or permitted
it to be done for him, an agreement to pay will be pre-
sumed unless there is proof that it was done gratui-
tously. But when a peculiar relationship exists, such
as we have been discussing, the right to remuneration
hinges on whether or not there was an understanding
that the services were to be rewarded—an under-
standing which may be established by direct testimony
or gleaned from the facts."

And on this same subject this court again, in Cole
v. Fitzgerald, 132 Mo. App. 17, 111 S. W. 628, through
the same judge, said: "Even granting appellant was
in her father's home as a member of the family, it was
not incumbent on her to establish by direct evidence a
contract to pay her; that is to say, by some writing or
the testimony of witnesses who heard the parties come
to an agreement. It is enough for her to adduce evi-
dence from which the jury might find she and the de-
ceased understood her services were not voluntary,
but were to be remunerated. We have pointed out in
previous opinions that when courts say an express con-
tract must be shown in cases like this, they only mean
the law will not imply a contract if the family relation
existed, and do not mean a contract must be proved by
direct testimony. [Fitzpatrick v. Dooley, supra; Fry
v. Fry, 119 Mo. App. 476.] From the earliest cases
on the subject in this State, the courts have uniformly
held an agreement or understanding to pay for work

done by a member of a family may be established by indirect evidence. [Smith v. Myers, 19 Mo. 433; Guenther v. Birkicht's Adm'r, 22 Mo. 439; Morris v. Barnes' Adm'r, 35 Mo. 412; Hart v. Hart, 41 Mo. 441; Cowell v. Robert's Ex'r, 79 Mo. 218; Reando v. Misplay, 90 Mo. 251, 2 S. W. 405 [59 Am. Rep. 13]; Sprague v. Sea, 152 Mo. 327, 53 S. W. 1074; Woods v. Land's Adm'r, 30 Mo. App. 176; Shannon v. Carter, 99 Mo. App. 134, 72 S. W. 495, and cases, supra.]''

In the case before us, we think it cannot be doubted that the evidence was sufficient to justify the submission of plaintiff's case to the jury. The testimony of Dr. Pearson, and particularly the portion thereof which we have italicized above, taken together with the other facts and circumstances in evidence, is sufficient to justify the inference that there was a mutual agreement or understanding between plaintiff and deceased that the support and maintenance provided the latter was to be paid for. It would appear that there was the intention on the part of plaintiff, on the one hand, to charge therefor, and the intention of the deceased, on the other hand, to pay for that which he received. It was not necessary to prove the making of a contract in so many words; but that there was an actual contract—a meeting of the minds and a contractual understanding and intention between the parties —may be inferred from facts and circumstances in evidence. [See Hartley v. Estate of Hartley, supra.]

Here, as is usual in such cases, the existence of a contractual relation between the parties could be established only by indirect proof. Plaintiff was, of course, incompetent to testify; and the agreement, understanding, and intention of the parties could be shown only by way of inferences to be drawn from the testimony of other witnesses. That it was the understanding and intention of both parties that the maintenance provided deceased should be paid for appears to be a just and reasonable inference from the evi-

dence. The declaration of the deceased that he was *"going to pay"* plaintiff, made in course of conversation concerning the subject-matter in controversy, is not a mere expression of appreciation or gratitude, but indicates that he understood that plaintiff was to be compensated, and that he intended that she should be. This, together with the testimony to the effect that plaintiff was endeavoring to have deceased pay her, was sufficient to take this question to the jury.

It is urged by learned counsel for appellant, both in his brief and in argument *ore tenus,* that the evidence shows that the support and maintenance supplied deceased by plaintiff was furnished, not with the intention she was to be paid therefor, but in expectation and hope that the deceased would leave his property to her at his death. But the evidence does not appear to bear out this contention. While it is true that there is evidence that plaintiff sought to have deceased convey or devise to her the real property which he owned, there is nothing to justify the inference that she boarded him during all of this period without an intention to charge therefor, merely trusting to receive something from him, as a bounty, at his death. Indeed, from the evidence as a whole, it would rather appear that plaintiff intended to charge deceased; but, inasmuch as he did not pay her, she sought to have him remunerate her by turning over to her his property or by leaving it to her by will. Her acts in this regard by no means negative the existence of an intention to charge for that which she furnished.

A careful consideration of the record convinces us that the demurrer to the evidence was properly overruled. There was substantial evidence tending to establish the facts necessary to be proved to make out a prima facie case for plaintiff. The weight to be given to the testimony of the witnesses, and the credibility of the latter, rested entirely with the jury.

II. Further assignments of error pertain to the refusal of the trial court to give two instructions requested by defendant. By one of these the defendant sought to have the jury told that, even though it be found that plaintiff rendered valuable services, with the intention and understanding with him that plaintiff would be paid therefor, yet if the jury found that deceased rendered plaintiff valuable services, furnished provisions, and paid bills for plaintiff, in an amount equal to the services rendered by plaintiff and as a remuneration therefor, then plaintiff was not entitled to recover. We think that the evidence was not such as to justify the giving of this instruction, and that the court committed no error in refusing it. There was evidence that plaintiff rendered services for the deceased, other than boarding him, and some evidence that deceased helped plaintiff to some extent with certain household work. Plaintiff's claim for nursing, darning, mending, etc., was withdrawn from the consideration of the jury for the manifest reason that there was no evidence to overcome the presumption obtaining that such services were rendered gratuitously. And such is likewise the case with respect to such services as it appears that deceased rendered plaintiff. it is not clear that he rendered services of any consequence and there is nothing to make it appear that any such services were rendered in compensation for board furnished him. There is no evidence that deceased paid bills for plaintiff, or furnished provisions for her use, in compensation for his support and maintenance by her. There is no evidence that he actually paid for anything with his own money, and certainly nothing to indicate that he was thus compensating plaintiff.

III. By the other instruction offered by defendant and refused, it was sought to have the jury told in substance that plaintiff could recover only upon proof of an *express contract* between plaintiff and deceased

that the latter would pay plaintiff. From what we have said above, we think it clear that there was no error in refusing this instruction. It is true that there are decisions in this State in which language may be found to the effect that a claim such as this must be based upon an *express* promise and undertaking to pay. And in this connection we are referred to Bircher v. Boemler, 204 Mo. l. c. 563, 103 S. W. 40; Guenther v. Birkicht's Adm'r, 22 Mo. 439. As is said, however, in Cole v. Fitzgerald, supra, such expressions of the courts in cases of this character mean merely that the law will not imply a contract where the family relation exists, and do not mean that the contract itself must be proved by direct testimony. In fact in the Bircher case, supra, it is said (204 Mo. l. c. 562, 103 S. W. 42), "the claim filed should have been based upon a contract, either express or implied, but the proof fails to show a contract of any kind." And in the Guenther case it is said that an express promise must be shown, "or *something* to prove that such was the expectation on both sides." This instruction could only have been misleading, and the court properly refused it. The instructions given at defendant's request properly submitted the issues. The only instruction given for plaintiff pertained to the measure of damages, and is not complained of.

IV. Appellant further assigns as error the action of the trial court in sustaining an objection to a question asked the witness, Dr. Pearson, by counsel for defendant, in the course of the cross-examination of this witness. As we have said, the witness was plaintiff's physician, and it seems that he had treated her on numerous occasions. The question asked him was: "As a matter of fact, Doctor, you haven't been paid for your services yet, have you?" This was objected to by plaintiff's counsel as being immaterial, and the ob-

jection was sustained. Appellant insists that this was error, for the reason that the purpose of this question was to show that the witness had an interest in the outcome of the suit; the theory being that plaintiff's ability to pay her doctor's bill was dependent upon her recovery upon her demand, although from the evidence it cannot be said that this was necessarily the case. It is to be conceded that the extent to which cross-examination may go is a matter resting largely in the discretion of the trial judge. However, in sustaining an objection to this question on the ground of immateriality, it would appear that the court lost sight of the fact that great latitude should be allowed, on cross-examination, in asking questions which would otherwise be wholly irrelevant to the issues. "For the purpose of testing the credibility of a witness, it is permissible to investigate the situation of the witness with respect to the parties and to the subject of litigation, his *interest,* his *motives, inclinations,* and *prejudices,*" etc. [Jones on Evidence (2 Ed.), sec. 826.] This same author says: "The cross-examination would be of little value if the witness could not be freely interrogated as to his *motives, bias, and interest,* or as to his *conduct as connected with the parties, or the cause of action.*" [Jones on Evidence (2 Ed.), sec. 828.]

While the appellate court does not ordinarily review the action of the trial judge in the exercise of his discretion in limiting the cross-examination of a witness, nevertheless it is said that "the right of *cross-examination must not be unduly restricted;* and, if such examination is arbitrarily limited by the court, while being conducted by counsel in a proper manner, it is error." [Jones on Evidence (2 Ed.), sec. 842.]

The question was not an improper one, and we are of the opinion that the court should have permitted it to be answered, and the objection that it called for something not material to the issues in the case was,

on cross-examination, not well taken. This was plaintiff's chief witness, and the record shows that without his testimony the plaintiff's case would not have been established. Certainly much liberality should be permitted in the cross-examination of such a witness.

Nevertheless, we are not prepared to say that the action of the court in sustaining the objection to this question should be held to be reversible error. Section 2082, Revised Statutes 1909, provides that "the Supreme Court or Courts of Appeal shall not reverse the judgment of any court, unless it shall believe that error was committed by such court against the appellant or plaintiff in error, and materially affecting the merits of the action." It does not appear that the error in question materially affected the merits of the action. Other questions were asked this witness for the purpose of testing his credibility and endeavoring to show that he had some motive in testifying as he did. These were answered without objection, and the right of cross-examination was not restricted otherwise than by sustaining the objection above noted. For the latter we think that we should not reverse the case, particularly in view of the statute to which we have just referred.

For the reasons given above the judgment of the circuit court should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.