Cowell *et al., Appellants,* v. Roberts' Executor.

1. **Master and Servant:** PARENT AND CHILD. Valuable services, which would, as between strangers, raise an implied promise to pay for them, when performed for a person *in loco parentis,* will not of themselves have that effect; and this whether they are performed wholly during minority or partly after majority.

2. ——: EVIDENCE. In an action against the estate of a deceased person for services performed for him during his lifetime, *Held,* that his will making provision for the plaintiff was properly admitted in evidence as corroborative of the claim made in defense that the position of plaintiff was that of a member of the family of the deceased, and as bearing upon the supposed undertaking to pay wages for his services.

*Appeal from Lafayette Circuit Court.*—Hon. WM. T. WOOD, Judge.

AFFIRMED.

*Burden & Son* for appellants.

*Wallace & Chiles* for respondent.

MARTIN, C.—This action was commenced in the probate court of Lafayette county in November, 1877, for the purpose of obtaining allowance of a demand against the estate of Jesse Roberts, deceased, for services, work and labor of Susan E. Cowell, as nurse, servant and housekeeper of said Roberts. It is alleged in the statement of the demand that said Roberts became indebted to her for said services and that he undertook and promised to pay her the amounts claimed, which in the aggregate reach the sum of $1,000. The trial in the probate court resulted in a judgment for the defendant, from which the plaintiffs appealed to the circuit court, where judgment again was rendered for the defendant by the court, the parties having waived a jury. From this last judgment the plaintiffs have appealed to this court. The evidence is voluminous and the instructions of law numerous; and it would be impossible as well as unnecessary to state them in detail.

It appears from the evidence in the case that Susan E. Howard, who is now Susan E. Cowell by virtue of her marriage, lost her mother by death in Daviess county, when she was only eighteen months old. She had a sister by the name of Jennie, a little older than herself, and they were both left by the death of their mother in 1854 in the care and custody of their father. He was a man of no estate and unable to raise them. The wife of Jesse Roberts was a cousin of this mother as was also the wife of P. A. Gibbs. Accordingly, in 1854, their father brought them from Daviess county and delivered them over to Roberts and Gibbs, who both resided in Lafayette county. Jennie was given to Mr. Gibbs and Susan to Mr. Roberts, to be kept and raised by them at their own expense. Mr. Gibbs testifies: "We couldn't refuse, and took them." At that time Susan was a delicate child and seemed to be in bad health. She grew up to be a strong and healthy child.

Mr. Roberts was a man of frugal and industrious habits, and possessed an estate of about fifteen or twenty thousand dollars in value before the war. Susan was taken care of by Mr. and Mrs. Roberts in her infancy, and was raised and sent to school by them. She was received by them into the family and treated as a member of it. She called Mrs. Roberts "Ma" and Mr. Roberts "Pa." After the emancipation of the servants in the family by the war, the housework had to be done by Mrs. Roberts and Susan. She attended to such household duties as she was able to perform, under the instructions and assistance of Mrs. Roberts, who was regarded as a superior housekeeper. They had assistance about the kitchen but were compelled to look after it principally themselves. Thus matters went on till the death of Mrs. Roberts in 1872. After that Susan took her place as lady of the house and attended to it as if it were her own. Before that time, as well as afterward, she had often, in cases of emergency, attended to matters about the place which are usually performed by men, such as catching a horse and bringing him in, and feeding stock. During the latter years of Mrs. Roberts' life the heavy part of the housekeeping was done by Susan, such as sweeping, washing and cooking, Mrs. Roberts being in feeble health.

It appears in evidence that she raised chickens, calves and pigs, and was allowed to sell them to her own use. With money received from such sources she used to purchase clothing and wearing apparel. Mr. Roberts was a very old man and died in 1877. He was feeble and sickly in his latter years, and Susan attended to him as faithfully as a daughter, and in doing this had to discharge the duties of a nurse. He executed a will in 1876 by which he bequeathed to Susan twenty acres of land and $500 in money, besides some household furniture. He had no children of his own, and the balance of his estate was devised to his kindred, who seem to be numerous enough. It appears from the evidence that this will was copied from a previous one similar to it in all respects except that it contained a leg-

acy to one James Roberts who was left out of this one. It also appears that Susan had access to the wills and seemed to be aware of the fact that she was to be a legatee. Susan came of age in 1871; she was married after the death of Mr. Roberts in July, 1877. She sues for services commencing on the 25th day of July, 1869, and ending with his death July 26th, 1877. It will be observed that this claim commences before the death of Mrs. Roberts and before she had attained her majority.

In the statement recited I have aimed to indicate the general character of the relations between the parties as disclosed from the evidence on both sides.

The principle governing this class of cases has been long established in this State by a series of well considered decisions. The fact that services of value have been rendered which would as between strangers, raise an implied promise on the part of the recipient thereof to pay for them, will not support or imply a promise as between parties who are related to each other as members of the same family by blood or adoption. Neither does a continuance of the family membership after the attainment of majority raise any implied promise in the absence of other facts from which a promise can be naturally inferred. The character and amount of services do not materially help to the inference of a promise if rendered during the continuance of the family membership. The doctrine that, after the attainment of majority, the promise, to support the obligation to pay, must be an express one, has not been accepted in this State. Notwithstanding the fact that family membership in itself implies that the services are gratuitous and without the expectation of pecuniary reward, the promise to pay may be implied from any facts or circumstances which in their nature justify the inference of an actual contract of hire or an actual understanding between the parties to that effect. *Guenther v. Birkicht*, 22 Mo. 439; *Hart v. Hart*, 41 Mo. 441; *Smith v. Myers*, 19 Mo. 433.

1. MASTER AND SERVANT: parent and child.

In stating the relation which Susan occupied in the family, I have not deemed it necessary to state the facts upon which plaintiff depends for a support to the promise to pay wages, and I will refer to them now. They consist of a conversation claimed to have been overheard between Mr. Roberts and Susan to the effect that he would pay her if she did not leave. The witness Robinson, on cross-examination, leaves it in doubt whether his information of the conversation does not come entirely from Susan herself. The payment of a sum of money by Mr. Roberts to Susan, as testified to by witness Kile, did not take place under circumstances which point definitely to a contract of hire. And the same reflection will apply to declarations made by Mr. Roberts to others in the absence of Susan, as sworn to by Theodore Book and Joseph Hook. These are all circumstances which, to give them their true weight, only tended to establish the understanding contended for. They went to the jury for all they were worth.

I have examined the long and numerous instructions given by the court for the parties, and am satisfied that as a whole they placed the case before the court, acting as a jury, in obedience to the law governing this class of cases. The court, in giving judgment for the defendant, evidently did not regard the conversation and declarations testified to as sufficient under all the circumstances of the case to sustain a promise to pay wages. This conclusion is not against the evidence, but is well warranted by it and ought not to be disturbed by an appellate court.

The court did not err in admitting evidence about the wills of Mr. Roberts. The fact of his providing for Susan 2. —— : evidence.    as he did, is corroborative of her position as a member of his family up to the time of his death. It is a circumstance bearing upon the supposed undertaking on his part to pay her wages. It is unreasonable to presume that an economical man, like Mr. Roberts, who was very particular about keeping out of debt, should make Susan a devisee of his bounty by will, while dying in debt

to her for $1,000 of unpaid wages not alluded to in the instrument.

The judgment is affirmed. All concur.