## EDWARD LILLARD et ux., Appellants, v. WILSON, Administrator.

### Division One, November 25, 1903.

1. **Services Rendered Parent:** QUESTION FOR JURY. Whether or not services rendered a badly-afflicted old man and his weak and infirm wife, by a son and his wife, who lived with him, were intended as a gratuity or were rendered under an implied contract for pay, is, upon a proper showing, a question for the jury in this State.

2. ———: ———: IMPLIED PROMISE TO PAY. The owner of a farm rented it to his son, and he and his wife lived in the house on the place with the son and his wife, the son paying him money rent, and each family furnishing half the family supplies. As the result of an accident the father became a cripple for life, and thereafter suffered with his kidneys and bowels, so that he had to be attended to as if he were a little child, and the daughter-in-law for eleven years rendered him faithful and efficient service, his wife being weak, sick and unable to serve him. *Held,* that the relation of the parties did not make them members of the same family, and takes the case out of the rule that services rendered another by a child or a member of his family are presumed to be gratuitous, and it was a question for the jury to decide whether or not the services were intended to be gratuitous or were rendered under an implied promise of remuneration.

3. ———: ———: ———: EVIDENCE. Eleven years after the services were begun, the deceased executed a paper in which he expressed his "will and wish" that his son and his wife "be paid a reasonable sum of money from my estate for their kind and considerate care and attention to me during my last years of life, and also for the care and attention to my beloved wife." *Held,* admissible in evidence in a suit against his administrator by the daughter-in-law for compensation for such services, not as showing an express contract, but as bearing on the intention of the deceased, and upon the question of whether the services were rendered gratuitously or under an implied promise for remuneration. Nor is such paper incompetent because it was executed after the bulk of such services had been rendered.

4. ———: PARTIES. Where the services were rendered by a daughter-in-law, she alone is the proper party plaintiff, and her husband should not be joined.

Appeal from Lafayette Circuit Court.—*Hon. Samuel Davis,* Judge.

REVERSED AND REMANDED.

*John Welborn* and *Charles Lyons* for appellants.

(1) The demurrer to the evidence should have been overruled. Gannon v. Gas Light Co., 145 Mo. 502; Gutridge v. Railroad, 105 Mo. 520; Finch v. Ullman, 105 Mo. 265; McFarland v. Bellows, 49 Mo. 311; Bank v. Simpson, 152 Mo. 638; Healey v. Simpson, 113 Mo. 346; Patton v. Bragg, 113 Mo. 600; Leeper v. Bates, 85 Mo. 224; Young v Webb City, 150 Mo. 333; McKown v. Craig, 39 Mo. 156; Dowling v. Allen, & Co., 6 Mo. App. 195; affirmed, 74 Mo. 13; Gibson v. Zimmerman, 27 Mo. App. 90; State ex rel. v. Goetz, 131 Mo. 179. The evidence shows clearly that deceased expected to pay plaintiffs for their care and attention, for no one more than he recognized the drugery that Bettie Lillard went through with for him, and he not only told Dr. Richart that he wanted Bettie Lillard well paid, but further requested Dr. Richart to send a notary and have him come

"over and fix up the papers, that he wanted to give Ed and Bettie some land." Gerz v. Demarra, 162 Pa. St. 530; Morton v. Rainey, 82 Ill. 215; Estate of Kessler, 87 Wis. 660; Price v. Price, 34 Am. Dec. 608; Martin v. Wright's Adm'rs. 28 Am. Dec. 468; Robinson v. Raynor, 28 N. Y. 494. (2) The court committed error in excluding the paper signed by W. C. Lillard in the presence of witnesses. Guenther v. Birkicht's Admr., 22 Mo. 448; Hart v. Hart, Admr., 41 Mo. 442; Voerster v. Kunkel, 86 Mo. App. 194; Cowell v. Roberts, Ex., 79 Mo. 218; Kock v. Hebel, 32 Mo. App. 103. In this case the instrument offered in evidence and excluded by the court was given to deceased to sign by plaintiffs and was signed by deceased, W. C. Lillard, in the presence of plaintiffs and other witnesses, and the writing clearly shows that W. C. Lillard wanted plaintiffs compensated and was "itself" evidence that deceased did not understand the services were being rendered as an absolute gratuity and without expectation of reward.

*S. N. Wilson* for respondent.

(1) This is an action at law upon a *quantum meruit* for services rendered by plaintiffs to W. C. Lillard. The evidence clearly showed that at the time the services were rendered the intestate did not expect or intend to pay therefor, and that plaintiffs did not expect or intend to charge for the same; and there was no evidence of implied contract between said parties; hence no error was committed in giving the instruction to find for defendant. Authorities sufficient are cited in appellant's brief on proposition that services rendered by a son and wife for the father are presumed to be gratuitous, which presumption must be overcome by proof of an express or implied contract that the father was to pay for such services. Baker v. Cunningham, 162 Mo. 143. The following authorities hold that, to prove an

implied contract, the intention to pay must have existed at the time services were rendered, and can not be affected by a subsequent change of intention: Guenther v. Birkicht's Admr., 22 Mo. 439; Morris v. Barnes, 35 Mo. 412; Hart v. Hart, 41 Mo. 441; Bittrick v. Gilmore, 53 Mo. App. 53; Kinner v. Tschirpe, 54 Mo. App. 575. The following cases show reversal, or demurrer to evidence sustained, in cases very similar to one here on appeal: Morris v. Barnes, 35 Mo. 412; Cowell v. Roberts, 79 Mo. 218; Erhart v. Dietrich, 118 Mo. 418; Wood v. Land, 30 Mo. App. 176; Louder v. Hart, 52 Mo. App. 377. (2) In an action brought on an implied contract, as in this suit, there can be no recovery by the plaintiffs when their evidence shows existence of an express contract regarding matters in controversy; hence, no error in giving instruction to find for defendants, because the recovery must be on same action pleaded. Cole v. Armour, 154 Mo. 333; Huston v. Lyler, 140 Mo. 252; Clements v. Yeates, 69 Mo. 623; Crobe v. Thomas, 19 Mo. 70; Chambers v. King, 8 Mo. 517; Christy v. Price, 7 Mo. 430; Fourth v. Anderson, 87 Mo. 354 (a suit instituted by a pleading in probate court); Davidson v. Brennemann, 27 Mo. App. 655. (3) The statute of Missouri does not authorize a wife to contract with her husband, but she can contract with any other person. There is a misjoinder of these plaintiffs and uniting of two several causes of action in one action because the evidence in this case shows no express contract between both of the plaintiffs with W. C. Lillard; and no joint contract can be implied under the circumstances of this case. Hence, no error was committed in giving instruction to find for defendant, as the defect not appearing on face of petition could only be reached, as was done, by an answer and demurrer to evidence in case of failure of proof. McCorkle v. Goldsmith, 60 Mo. App. 475; Lindsley v. Archibold, 65 Mo. App. 117; R. S. 1899, sec. 598; Gregory v. McCormick, 120 Mo. 663. (4) The court did

not err in excluding from evidence the paper shown at point 2 of appellants' brief:   (a) Because said paper was not signed by W. C. Lillard with knowledge of its contents, he being "very deaf" and "not having spectacles," and same was completely impeached by testimony of two attesting witnesses, who say he signed at command of son.   (b) And if voluntarily signed, the said instrument was an express contract (if not a will), and its being signed by only one party thereto was invalid and not competent evidence of an implied contract sued on.   If said writing named a fixed amount instead of "a reasonable sum" no doubt could arise as to its being a written express contract, but naming an amount at "a reasonable sum" did not change the character of the paper.   State v. Hull, 161 Mo. 487.   "Testimony completely impeached is no testimony at all," etc. Hook v. Railroad, 162 Mo. 580.   "Impossible testimony will be disregarded."   Implement Company v. Tower, Ex., 158 Mo. 282; Glover v. Henderson, 120 Mo. 378; Lewis v. Ins. Co., 61 Mo. 538.

MARSHALL, J.—The plaintiffs are husband and wife.   Edward Lillard was the son of W. C. Lillard and Sarah J. his wife.   W. C. Lillard died January 13, 1899, and the plaintiffs exhibited this claim against his estate for services, as nurse, rendered him and his wife, at his request.   The claim is for sixty dollars a month from June 2, 1888, to January 13, 1899, aggregating $7,200, for nursing the deceased, and for forty dollars a month from January 4, 1893, to January 13, 1899, aggregating $1,920, for nursing his wife.

The answer denies all liability; denies that the liability, if any, is to the plaintiffs jointly, and therefore pleads a misjoinder of parties; and avers that on March 1, 1888, the deceased rented his farm, near Concordia, Missouri, to his son, Edward, the plaintiff, for three hundred dollars a year, and upon the agreement that the two families were to occupy the house jointly, each fur-

nishing one-half of the provisions for family use; avers that such rental was renewed from year to year up to the death of the father, at which time it is alleged that Edward owed his father $1,225 on account of rent, and $300 on account of a note dated January, 1895, and asks judgment for those amounts. The answer also pleads the five-year statute of limitations as to all the claim prior to June 1, 1894.

The case made by the plaintiffs was this: The father rented his farm to his son, Edward, on March 1, 1888, for three hundred dollars a year, and upon the further agreement that the two families should live together in the father's house, but each was to furnish one-half of the necessary provisions. It also appeared that the son paid all the rent that became due. It does not appear whether there was any such note given as is described in the answer, nor, if given, whether it was paid or not. On the 2d day of June, 1888, the father was thrown from a horse and his hip was broken near the socket, and he was thereafter a cripple. Thereafter he suffered also with his kidneys and bowels to such a degree that he lost control over them, and they acted without his knowledge or intention. This trouble was so great at times that, the witnesses say, he had to be attended to like a child. He also suffered with an eczema on his leg, which had to be cleansed, treated and bandaged, often as much as twice a day. He required constant attention in these respects for the balance of his life, running eleven and a half years. He was about eighty-two or three years old when he died. His wife was also old and weak, and suffered with asthma, and was, at times, otherwise sick, and required a good deal of waiting on. When she was able so to do, she assisted in housework to the best of her ability and looked somewhat after her grandchildren, but she was unable to nurse the deceased. Substantially all the nursing of both the old people was done by the plaintiff, Bettie Lillard, as was also all the housework and cooking for

both families and for the boarders and the farm hands. It was shown that the deceased many times expressed to his friends and acquaintances and to all with whom he came in contact, his realization of his condition, his appreciation of the invaluable services that his daughter-in-law rendered to him, and his desire that she should be well paid therefor, and on one occasion he asked the doctor who had arranged the affairs of a neighbor of his, and upon being informed, requested the doctor to send the same notary to him, saying he wanted to give some or all—the doctor was not clear which—of his land to his son and his daughter-in-law in compensation for the services they had rendered him, in nursing him, but it does not appear that the notary ever came to him, and so, no provision was thus made by him in discharge of his obligation.

It does appear, however, that on the 8th of December, 1898, the deceased executed the following written instrument:

"I hereby certify and state that I will and wish my son, E. W. Lillard and wife, Bettie Lillard, to be paid a reasonable sum of money from my estate; first for their kind and considerate care and attention to me during my last years of life, and also the care and attention of my beloved wife, Sarah Jane Lillard.

"Witness my hand.         W. C. LILLARD.

"Signed this 8th day of December, 1898.

"Witness:

            "WM. BORGSTADT.
            "W. B. STRADER."

The attesting witnesses said that they were called by the son to witness the instrument, and that the son produced it and showed his father where to sign it, and he did so without reading it. The court excluded the paper, and the plaintiffs assign that ruling as part of the error complained of.

There was an abundance of testimony adduced by the plaintiffs to support their claim, including the testimony of the widow, of the doctors, the friends of the deceased, the former boarders and farm hands. At the close of the plaintiffs' case the defendant demurred to the evidence, the court sustained the demurrer, and the plaintiffs appealed.

## I.

The position taken by the defendant is that there was no express contract by the deceased to pay the plaintiffs, either jointly or separately, anything for the services, and that the circumstances and facts shown in evidence are not sufficient to warrant an implied contract therefor, but that by reason of the relationship of the parties those services were intended to be and must be held to be merely gratuitous, and that so far as the paper of December 8, 1898, is concerned, it was properly excluded, because it was executed by the deceased at the direction of his son, without reading it or knowing what it was, and because it is a mere expression of a desire on his part that the plaintiffs should be paid a reasonable sum for their services, expressed after the bulk of the services had been rendered, and therefore does not show that at the time the services were being rendered either party expected the services to be paid for.

Implied contracts are either implied in fact or in law. The first class arise in cases where according to the ordinary course of business and the common understanding of men a mutual intent to contract is implied. The second class are mere fictions of law, and arise in cases where there is no evidence of intention to contract, but where, in the light of the circumstances of the case, the acts and conduct and verbal statements of the parties, the law implies a duty to pay for a benefit con-

ferred. In such case, "the intention is disregarded."
[15 Am. and Eng. Ency. Law (2 Ed.), p. 1078.]

Of course there can be no recovery for services vol-
untarily rendered without expectation, at the time of
rendition, of compensation therefor, or with the hope of
being rewarded by will or otherwise, as a matter of
generosity, for under such circumstances, no legal or
moral obligation arises. [Id., p. 1079.]

But, "it is well settled that where one performs
services for another at his request, but without any
agreement or understanding as to wages or remunera-
tion, the law implies a promise on the part of the party
requesting the services to pay a just and reasonable
compensation, unless there is a family relation existing
between the parties, and this remuneration is recovera-
ble on a *quantum meruit*." [Id., p. 1081.]

So, "where services are performed by one for an-
other either with or without the latter's consent or
knowledge, and he knowingly accepts and avails him-
self of those services, the general rule is that the law
will imply a promise to pay a fair and reasonable com-
pensation therefor." [Id., p. 1082.]

Touching the subject of services rendered by mem-
bers of one family to each other, the same valuable
work, at page 1083, says: "Ordinarily, where services
are rendered and voluntarily accepted, the law will
imply a promise on the part of the recipient to pay for
them; but where the services are rendered to each other
by members of a family living as one household, there
will be no such implication from the mere rendition and
acceptance of the services. On the contrary, the pre-
sumption is that the services are intended to be gratuit-
ous, and in order to recover therefor the plaintiff must
affirmatively show either that an express contract for
remuneration existed or that the circumstances under
which the services were rendered were such as exhibit
a reasonable and proper expectation that there would
be compensation. The reason for this is that the house-

hold family relationship is presumed to abound in reciprocal acts of kindness and good will which tends to mutual comfort and convenience of the family; and the rule stated applies not only to members of a family who are related by blood, but to those distantly related, and to those who are in fact not related at all, provided they live together as members of one family."

But while this is the general rule, the same work at page 1084, says: "The presumption that the services rendered by one member of a family to another were gratuitous is not a conclusive one. It may be overcome by showing an express agreement for payment, or by showing circumstances which will support the implication that the services were to be paid for. The burden is, of course, on the person rendering the services to overcome the presumption which the law raises that such services were rendered gratuitously."

The cases that have undergone adjudication in this State illustrate the rules thus generally stated.

In Whaley v. Peak, 49 Mo. 80, the deceased executor sued defendant for board, because he lived at the house of the deceased. The jury found for the defendant, and the plaintiff appealed. It appeared that the defendant was the husband of the stepdaughter of the deceased, and it was contended that the deceased had invited the defendant and his family to come and live with him. This court said: "In cases of this kind no absolute rule of law can be laid down. Whether there was an implied contract for compensation, or whether it was a mere gratuity, are questions to be determined by the jury upon the evidence, after taking into consideration the circumstances in life of the parties, the degree of relationship and all other facts which may affect the case."

In Smith v. Myers, 19 Mo. 433, it was held that "where a mother-in-law performs menial services in the family of her son-in-law, it is for the jury to determine,

from all the circumstances, whether it was under an implied contract for wages, or not.'' This court said: ''The general rule is that, whenever service is rendered and received, a contract of hiring or an obligation to pay will be presumed. This is an undoubted rule between strangers. But a relationship between the parties may exist, such as will cause the presumption that the services are acts of kindness and affection. In all such cases, it will be a question for the jury, taking into consideration the nature and degree of the relationship, the circumstances in life of the parties, and other matters which may effect it, whether there was an implied contract for compensation.''

In Guenther v. Birkicht's Admr., 22 Mo. 439, a stepson continued to reside in the family of his stepfather, after attaining his majority, and after the latter's death exhibited a claim against his estate for labor and work. It appeared that the plaintiff had lived with his mother and his stepfather ever since their marriage, and was treated and cared for like one of the family. This court held that the presumption that he was to be paid for his services, implied by law under other circumstances, was repelled, and it devolved upon the plaintiff to show affirmatively that it was the intention of the parties that the services were to be paid for and were not gratuitous. Accordingly a judgment for the plaintiff was reversed and the cause remanded for trial anew.

In Hart v. Hart's Admr., 41 Mo. 441, a son exhibited a claim against his mother's estate for labor, etc. He recovered judgment below and the judgment was affirmed. This court said: ''The theory of the appellant is, that where a son continues to reside with his parent after he arrives at the age of twenty-one, and performs work and labor, and renders service, he can not recover unless he shows a special or express contract entered into with his parent for wages or compensation. This is certainly the settled rule of law in England and in some of the States of this Union. As between stran-

gers, the general rule undoubtedly is, where nothing is shown to the contrary, that whenever services are rendered and received, a contract of hiring or an obligation to pay will be implied.   The mere fact, disconnected and alone, that a child resides with his parents after it has attained its majority, and performs service, will not raise an implied assumpsit.   The parent is not legally entitled to the earnings of his children after they arrive at the age of twenty-one, nor is he legally bound to support them; yet if they live with him as members of his family without any contract or understanding that he shall pay for their services, or receive pay for their maintenance, the law will not imply a promise to pay on either side.   [Williams v. Hutchinson, 3 Comst. 312.]   But our court has held, and we consider the doctrine more in consonance with justice, that in all such cases it is a matter for the jury to determine from all the circumstances whether the services were rendered under an implied contract for wages or not.   This position is also supported by many respectable authorities in other States.''

In Cowell v. Roberts, 79 Mo. 218, the claimant was a relative of the decedent's wife, and had been raised and cared for by him and his wife as a member of his family.   After his death she exhibited a claim against his estate for services as nurse, servant and housekeeper.   The lower court decided in favor of the defendant and she appealed to this court, where the judgment was affirmed.   This court said: ''The doctrine that, after the attainment of majority, the promise, to support the obligation to pay, must be an express one, has not been accepted in this State.   Notwithstanding the fact that family relationship in itself implies that the services are gratuitous and without the expectation of pecuniary reward, the promise to pay may be implied from any facts or circumstances which in their nature justify the inference of an actual contract of hire or an actual understanding between the parties to that

effect.'' Citing Guenther v. Birkicht's Admr., supra; Hart v. Hart's Admr., supra; and Smith v. Myers, supra.

In Sprague v. Sea, 152 Mo. 327, the plaintiff presented a claim against the estate of one Vaile for services as housekeeper. Among other things the defendant contended that the plaintiff was a relative of the deceased and did not expect any compensation and did not intend to make any charges for her services. The court instructed the jury that they were to determine whether her services were rendered gratuitously and without expectation of reward, or under an understanding and implied contract that she would receive what her services merited.

In short, whether under circumstances of this character the services were intended as a gratuity or under an implied contract for pay is a question for the jury, upon a proper showing in this State. [Kerr v. Cusenbary, 60 Mo. App. l. c. 563; Voerster v. Kunkle, 86 Mo. App. l. c. 197.]

The testimony adduced in this case abundantly shows that the deceased said many times to many disinterested persons during the years when the services were being rendered to him by his daughter-in-law, that she ought to be well paid for all the drudgery she had gone through for him. His wife was old and not able to wait on him but on the contrary needed waiting on at times herself. He was crippled and sorely afflicted and needed constant attention during the day and night. His daughter-in-law rendered him efficient and faithful service. He wanted and expected her to be paid, for he said so and tried to get some one to fix up the papers for him so he could give her and his son some or all of his lands. The widow expected her to be paid and still expresses the hope that she may be paid. There is one circumstance in this case that tends strongly to take the case out of the rule that services rendered by a child to a parent, while living in the house of the parent, are

presumed to have been gratuitously rendered, and that is that though the plaintiff Edward was the son of the deceased, and the plaintiff Bettie was his daughter-in-law, and though they lived with their family in a house belonging to the deceased, and though the deceased and his wife also lived in the same house, it is not true that the plaintiffs were living in the family of the deceased. On the contrary, though the relation of parent and child existed between the deceased and plaintiffs, and though both families lived in the same house, it was not as a child lives with a parent as a member of his family, but was the result of a business arrangement whereby the son paid the father rent for the farm, and as a part of the arrangement their two families lived together in the same house, each furnishing one-half of the family supplies.

This very arrangement excludes, prima facie, any idea that either expected the other to give him ''something for nothing,'' or as a result of relationship, but that it was a matter of business between them.

In no true sense, therefore, can it be said in this case that the plaintiffs lived in the family of the deceased.

Under such a state of facts the question was clearly one for the jury, whether the services were intended to be gratuitous or under an implied promise of remuneration, and the trial court erred in taking the case from the jury.

## II.

The written statement of December 8, 1898, was admissible in evidence, not as showing an express contract, but as bearing upon the intention of the deceased, and upon the question of whether the services were rendered gratuitously or under an implied promise. The fact that it was executed after the bulk of the services had been rendered does not render it incompetent, for it is

merely expressive of the understanding of the deceased as to whether or not the services rendered had been rendered as a gratuity.   Statements by the deceased of intention or desire to pay for services rendered by a nurse, were held admissible in the recent case of Ryans v. Hospes, 167 Mo. 342.   There was no issue or substantial proof that this paper was produced by fraud.

## III.

The evidence shows that Bettie Lillard rendered substantially all the services that were rendered, and that Edward rendered no services of any particular value.   It does not appear that there was any interest in common between Edward and his wife as to the services rendered.   She was entitled to the amount claimed as the wages of her separate labor (R. S. 1889, sec. 6869), and was competent to sue for them separately (R. S. 1889, sec. 6864).

If upon a trial anew the facts appear as they now appear, the plaintiffs, if so advised, should be permitted to amend, without costs, by striking out the name of Edward W. Lillard, and proceeding in the name of Bettie Lillard alone.

For these reasons the judgment is reversed and the cause remanded to be proceeded with in accordance herewith.

All concur.