Sarah L. POAGE, Respondent,

v.

Fountain C. PARKER, Administrator of the Estate of Mary L. Schwartz, Deceased, Appellant.

No. 23183.

Kansas City Court of Appeals. Missouri.

Feb. 6, 1961.

Ferd J. Frankenhoff and J. Earl Tethrow, St. Joseph (Price Shoemaker, Elmer E. Reital, St. Joseph, of counsel), for appellant.

Goldman & Goldman, by Libbie Loraine Goldman, St. Joseph, for respondent.

MAUGHMER, Commissioner.

Plaintiff, Sarah L. Poage, filed her claim in the Probate Court of Buchanan County, Missouri against the estate of Mary L. Schwartz, deceased, in the amount of $20,-000 "on account of work, labor and services rendered deceased". Her demand more specifically listed the items as including nursing and "furnishing her with food, lodging and assisting in the maintenance and repair of her property". It was alleged the same were furnished and performed continuously from February, 1947 until March 11, 1959, when Mrs. Schwartz died. The case was never litigated in the Probate Court but was transferred to the Circuit

Court. Trial there resulted in a verdict and judgment for plaintiff in the sum of $9,250. Defendant administrator has appealed and asserts (1) that there is no substantial evidence to support the verdict; (2) that the Court erred in sustaining plaintiff's objections to the introduction in evidence of a promissory note given deceased by plaintiff and her husband, and (3) error in giving plaintiff's Instruction No. 1.

During the twelve year period involved from February, 1947 until March 11, 1959, Mary L. Schwartz, a spinster, resided in St. Joseph, Missouri, and next door to the home of Sarah L. Poage, the plaintiff-claimant, and her husband, Harold Poage. It was stipulated that deceased's estate amounted to approximately $47,000 and her heir at law was a brother, who had been a patient in State Hospital No. 2 for forty-seven years.

Plaintiff presented evidence from which the following facts might be concluded. Mrs. Schwartz was a rather large woman and weighed about 200 pounds. During the 12 years in controversy, she suffered total disability on three occasions. In 1951, her leg was broken. After hospitalization and during convalescence from this injury she received close and complete care from Mrs. Poage. Mrs. Schwartz's ability to walk thereafter was impaired. In 1956, her teeth were extracted and again she was looked after by claimant. Then during the last 20 days of her terminal illness, it was conceded she was given total care by plaintiff. There was evidence that during all of these years, Mrs. Schwartz was a poor housekeeper, who failed to prepare meals regularly or keep up with her housekeeping requirements. Mrs. Poage did at least some of her laundry and prepared and furnished meals. Witnesses said deceased had a speech difficulty and that claimant supervised the cleaning, repairing and renting of her apartments,—also interviewed prospective tenants and collected rent. Plaintiff from August, 1955 until February, 1959, was employed at a lunch counter located in the Sollars Drug Store. From

this place at times she prepared and took meals to deceased. Mrs. Schwartz, over the whole period, was frequently in plaintiff's home, ate meals there, watched television, visited and found companionship.

Various witnesses quoted Mrs. Schwartz as expressing her appreciation for the help she was receiving from Harold and Sarah Poage. City Councilman Welch said he heard her say: "They were going to be taken care of". Mr. Stroud heard her say: "Some day she hoped to take care of them for the things they had done for her". Harold Poage declared that Mrs. Schwartz said many times: "If you will help me, I will help you in return. I will make it right with both of you because when I am no more, you will get what I have". Homer Giles recited hearing Mrs. Schwartz say that Mrs. Poage would get well paid for what she was doing and "When I am no more, what I have got is hers".

■ Viewing the evidence from plaintiff's standpoint and giving her, as we must on appeal, the benefit of all proper inferences and disregarding defendant's evidence, to the contrary, we must conclude there was substantial and credible evidence to support the verdict. Were we trier of the facts, possibly our conclusion, from the monetary allowance standpoint, might have been different from that of the jury. However, considering the long period involved and the wide extent of services allegedly performed, we cannot say that reasonable men could not have arrived at the conclusion reached by the jury. As stated by the Supreme Court in Siegel v. Ellis, Mo., 288 S.W.2d 932, 934: "But we do not weigh the evidence in jury-tried cases. It is only when there is a complete absence of probative facts in such cases to support the verdict that appellate courts are authorized to interfere. 3 Mo.Dig.Pt. 2, Appeal and Error, ■ Consequently, we must state and review the evidence from the viewpoint most favorable to respondent, Machens v. Machens, Mo., 263 S.W.2d 724, 734(16), and disregard defendant's evidence except to the extent it aids

plaintiff's case, 3 Mo.Dig.Pt. 1, Appeal and Error, 

On appeal appellant says the alleged services were not continuous and plaintiff's evidence fails to show that she alone furnished "board" for decedent, or that she alone rendered the personal services, and it does not warrant a finding of implied contract in favor of plaintiff alone.

 It is, of course, true that services furnished upon the theory and analogy of an open account must be continuous, else the statute of limitations may be applicable to part of the claim. However, there may be a hiatus or interruption in the period, unless there is a permanent cessation with no present intention of resumption. Minor v. Lillard, Mo., 289 S.W.2d 1, 6; Warren v. Davis, Mo.App., 97 S.W.2d 159, 164. In support of his charge that if the evidence here shows anything, it shows only a promise to pay jointly to both Mr. and Mrs. Poage for services, appellant cites Ashley v. Williams, 365 Mo. 286, 281 S.W.2d 875, 879. In that opinion, 281 S.W.2d at page 879, the Supreme Court had this to say on the question: "Even if it be assumed that George Minnick stated that he wanted George and Allie to have whatever he had left for taking care of him, this did not necessarily mean or imply that they must have it jointly. They could take whatever he had left in severalty as well as jointly in the proportion that the services of each bore to the total services rendered".

The meals procured from the lunch counter were presumably paid for by plaintiff. All of the meals furnished were prepared by her. From 1955 until February, 1959, when plaintiff gave up her employment to care for Mrs. Schwartz, she had earned income of her own, some of which might have been expended for household expenses, including groceries. At the trial neither her husband nor defendant raised any question as to her entitlement to claim reimbursement for board furnished. We believe that in this case plaintiff can maintain her action for work, labor, services, nursing, food and lodging furnished without joining her husband as a party plaintiff.

 There is no question but that where valuable services are rendered by one person to another, the law, absent a family relationship arising from close blood ties or a family living arrangement, presumes an intention to charge, an intention to pay, and brings into being an implied contract. Moore v. Renick, 95 Mo.App. 202, 68 S.W. 936, 938; Patrick v. Crank, Mo.App., 110 S.W.2d 381, 384; Wells v. Goff, 361 Mo. 1188, 239 S.W.2d 301, 302.

 Appellant's second point, as stated, is that the Court erred "in sustaining plaintiff's objections to the introduction of an unpaid promissory note given by plaintiff and her husband to deceased Mary L. Schwartz prior to her death, on the grounds that said note was solely a matter of counterclaim and could not be used for purposes of impeachment and was immaterial for all purposes". Before determining this issue it is necessary to examine the record and learn just what transpired.

Before trial commencement, counsel for plaintiff in the Court's presence inquired if counsel for defendant intended to refer in his opening statement to a not yet due promissory note executed by Mr. and Mrs. Poage in favor of deceased. The defense attorney answered "No", but stated that he would refer to it in cross-examination and in final argument. Then the Court indicated that unless the matter was raised by counterclaim, no reference should be made to it, although the Court made it clear it was not precluding the possibility of a different ruling during the trial if and when the matter arose. Defendant's attorney stated it was his position that reference to the note was proper to "show the jury that if this plaintiff has a claim, why should she borrow $2500 and have $20,000 coming in her claim?" We think this preliminary discussion containing no offer of proof, and no specific or final ruling by the Court does not preserve this particular question or any question for review. This is especially so

in light of the Court's declaration that its indicated ruling might be changed during the trial.

The matter did arise on two occasions during the trial. On cross-examination plaintiff's husband Harold Poage was asked if he ever borrowed any money from Mrs. Schwartz. There was an objection, which the Court first sustained. A discussion ensued and defense counsel said: "I am not asking about a note or anything else". Thereupon the Court reversed its ruling as to this question and again stated that evidence as to the promissory note was not admissible and the witness then stated that his wife borrowed money in 1954, and that he or both had borrowed in 1958. This interchange neither provides nor preserves anything for review. In fact defendant was permitted to pursue the matter as fully as he sought to pursue it at that time. The issue appeared for the third time while Fountain C. Parker, defendant and public administrator, was on the stand. His attorney put this inquiry to him: "Q. Have you had an opportunity to determine whether or not Mr. and Mrs. Poage borrowed any money from Mary L. Schwartz, deceased?" There was an objection, then a discussion out of the hearing of the jury in the course of which defendant's trial attorney stated: "The defense is offering this testimony for the purpose of the impeachment of the witness Harold Poage and to attack his credibility. He denied he signed any obligation or made any loan or borrowed any money in the year 1958". The Court then inquired if counsel was attempting to elicit testimony as to the $2,500 note. Counsel's reply was "No, Your Honor, I have made no reference to any promissory note of any kind. I am simply asking whether or not Mr. Parker has determined that Mr. and Mrs. Poage have borrowed money from Mrs. Schwartz for the purpose of impeachment and to attack the credibility of the witness". Thereupon the Court restated its position with the conclusion: "If it is the $2500 note, I rule it out". The Court then suggested that counsel make an offer of proof

and asked this question: "What will your client, the public administrator, tell you if he is permitted to answer the question?" Counsel replied: "He will testify that Mr. and Mrs. Poage did borrow money from Mary L. Schwartz and that is the end of my question". On the question of its admissibility for impeachment and to "show that Mr. and Mrs. Poage did borrow money from Mary L. Schwartz", Mr. Poage had already agreed and testified that such was the fact. It is our conclusion that the promissory note was never definitely identified, was not even marked as an exhibit and was never validly offered in evidence nor is the point as to its admissibility preserved on appeal. We have set forth the record upon which this conclusion is based. Therefore, appellant's second point must be ruled adversely and without exploring its merits.

■ Appellant's final assignment asserts Instruction No. 1 is erroneous in that it does not require a finding "that respondent expected to be paid for services at the time she rendered such services". We set out the instruction:

"The Court instructs the jury under the law where one performs valuable services for another, the benefit of which has been received and enjoyed by her, the law presumes an intention on part of the former to charge and the latter to pay the reasonable value thereof and implies a promise on the part of the one receiving the services to pay a reasonable value for said services.

"Therefore, the Court instructs the jury if you find and believe from the evidence that plaintiff Sarah L. Poage from February 1947 to the death of Mary L. Schwartz, March 11, 1959, rendered services to Mary L. Schwartz, now deceased, in cleaning her apartments, in doing her laundry work, in furnishing her meals, in attending to her medical needs, in helping her look after her property and nursing

her, if so, and you find that at the time such services were performed that Mary L. Schwartz accepted the benefits of said services, if she did, then your verdict will be for Sarah L. Poage in such sum as you believe from the evidence such services are reasonably worth not to exceed Twenty Thousand Dollars ($20,000.00)."

Appellant concedes that paragraph 1 of the instruction is a correct declaration of law and then invites our attention to the basic rule that an instruction which purports to cover the entire case and direct a verdict must hypothesize every fact essential to plaintiff's right of recovery and a failure to do so constitutes reversible error. Jones v. St. Louis-San Francisco Ry. Co., 226 Mo.App. 1152, 50 S.W.2d 217, 220, Cassin v. Lusk et al., 277 Mo. 663, 210 S.W. 902, 905. Thus far we join and agree, but is an instruction in this type of case and under this evidence so bad as to require reversal for failure to require a positive and affirmative finding "that plaintiff expected at the time she rendered services to be paid therefor"?

More than fifty years ago in Christianson v. McDermott's Estate, 123 Mo.App. 448, 100 S.W. 63, 64, a case arising in Savannah, Missouri, and just twelve miles from St. Joseph, this court, speaking through Broaddus, P. J. (grandfather of the present Judge Broaddus) said regarding an instruction in that case: *"It did omit, however, any reference whatever to the intent with which the plaintiff rendered the services. * * ** And 'It is well settled that where one performs services for another at his request, but without any agreement or understanding as to wages or remuneration, the law implies a promise on the part of the party requesting the services, to pay a just and reasonable compensation, unless there is a family relation existing between

the parties, and this remuneration is recoverable on a quantum meruit.' Lillard v. Wilson, 178 Mo. 145, 77 S.W. 74. And it is said, that 'Implied contracts are either implied in fact or in law. The first class arises in cases where, according to the ordinary course of business and the common understanding of men, a mutual intent to contract is implied. The second class are mere fictions of law, and arise in cases where there is no evidence of intention to contract, but where, in the light of the circumstances of the case, the acts and conduct and verbal statement of the parties imply a duty to pay for a benefit conferred. In such case, the intention is disregarded.' Id., 178 Mo., loc. cit. 152, 153, 77 S.W. 74. This case falls within the foregoing rule, no family relation existing between the parties. *It was not therefore error to omit from the instruction any reference to the intention of plaintiff to charge for her services."* (Italics added). The proposition was ruled similarly in Carrell v. McDonnell, 139 Mo. App. 450, 122 S.W. 1129, and in Warren v. Davis, Mo.App., 97 S.W.2d 159, 164, where the court said: "While appellant's instruction No. 6 placed the burden of proof on the plaintiff to show an intention to charge for the services, the law is that it was not necessary to submit this question of intention to the jury, the plaintiff not being a member of deceased's family". Appellant has not cited any case holding differently on this question.

Since we find no reversible error, the judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court. All concur.