In the Matter of the **ESTATE of Andrew WINSCHEL, Deceased.**

**Leo WINSCHEL and Clemens H. Winschel, Administrators, Defendants-Appellants,**

v.

**Hilda GLASTETTER, Plaintiff-Respondent.**

No. 8399.

Springfield Court of Appeals.

Missouri.

July 22, 1965.

Leo J. Rozier, Roscoe D. Moore, Perryville, for defendants-appellants.

Bill D. Burlison, Cape Girardeau, for plaintiff-respondent.

HOGAN, Judge.

This is an action brought by the plaintiff, Hilda Glastetter, against the defendants, as administrators of her father's estate, to recover the reasonable value of services rendered to Mr. Andrew Winschel over a period of about sixteen years. The claim was first tried in the probate court, and, on appeal by the plaintiff, was tried to a jury in circuit court. The jury has returned a verdict for $4,000.00 in favor of the plaintiff, and the defendants have appealed.

In 1946, the decedent, Andrew Winschel, lived with his wife on a farm near Perryville, Missouri. The plaintiff, one of the decedent's nine children, was employed in St. Louis. In September 1946, Mrs. Winschel suffered a "stroke" and became bedridden. At Mr. Winschel's request, the plaintiff "moved back" to the farm near Perryville and attended Mrs. Winschel until she died in April 1947. The plaintiff received the sum of $100.00 per month for her services in caring for her mother.

Very shortly after his wife died, Mr. Winschel, then 73 years of age, executed a will in which he declared, among other things, that " * * * I also want the child or children who shall care for me in my old age paid generously, for such attention * * *."

In June 1947, Mr. Winschel left his farm and moved to Perryville, and the plaintiff accompanied him. In September 1947, the plaintiff was married, and she and her husband continued to live with Mr. Winschel under an arrangement whereby the plaintiff and her husband paid the utilities and the grocery bill, Mr. Winschel the taxes on the house, and the plaintiff and her husband were allowed to use "one room free rent." Two rooms upstairs "was rented out and Mr. Winschel collected rent on." As the plaintiff's family increased (she became the mother of three children), the tenants were moved out; plaintiff, her husband and children were allowed the use of two bedrooms and shared the use of the kitchen. This arrangement lasted from June 1947 to November 1957, during which time the plaintiff washed and ironed for Mr. Winschel, "kept his [decedent's] room clean, and saw that he was clean," and did the cooking, sewing and mending. In 1953, the Glastetter family bought a house of their own in Perryville but disposed of it when Mr. Winschel refused to move. The evidence indicates that during the period from 1947 to 1957 the decedent was deaf and his vision was somewhat limited, but otherwise he was in good health and required "no special attention." Mrs. Glastetter received no payment for her services rendered during this period, though the decedent "mentioned" several times " * * * that Hilda * * * should get paid for her services that she had to render for him * * *."

In November 1957, plaintiff and her family moved to Cape Girardeau and Mr. Winschel moved with them. Decedent was then 83 years old and the erosion of age set in. In 1958, Mr. Winschel became ill, "developed a heart condition, high blood pressure, his nose was bleeding," and began to require careful attention. In January 1962, the decedent had a prostate operation and "lost control of his urine." As the

plaintiff's sister described the situation, the plaintiff " * * * took care of him like a baby, she took him to the bathroom and because he had no control of his urine she had several urinals for him, she had a clamp for his privates, and she had to take him to the bathroom, unclamp him, clamp him back up again when he was finished. If he had an elimination, she wiped him. That was a horrible chore, believe me." In addition to this attention, the plaintiff "led him [Mr. Winschel] around because he was weak * * * she had to dress him [and] undress him," and the plaintiff continued to do the cooking, washing and ironing. Mr. Winschel died January 23, 1963, at the age of 89. Further details of the evidence will be referred to in the course of the opinion.

Errors assigned are: a) that the evidence is insufficient to overcome the presumption that the services were rendered gratuitously; b) that the court erred in permitting Mr. Winschel's will to be introduced in evidence; c) that Cyril Glastetter, the plaintiff's husband, should not have been permitted to testify, because he was in fact a real party in interest and should have been joined as a party; d) that the trial court erroneously received the evidence of a registered nurse concerning the value of the services rendered; e) that the evidence established that the plaintiff had actually been paid for her services; and f) that the verdict is excessive. We agree

with the respondent, incidentally, that these points are somewhat indifferently briefed. The appellants' "argument" does not follow the "points relied on" as required by Rule 83.05(a) (4),[1] and they argue the evidence, for the most part, without page references as required by Rule 83.05(d). However, a reading of the appellants' brief discloses fairly clearly what they claim as error, and why, and therefore we decline to treat their brief as being wholly insufficient or their points as being abandoned.

So much has been written concerning recovery for services rendered to another standing in a family relationship that it would serve no useful purpose to reiterate the general rules in this opinion.[2] The presumption is that such services were gratuitously rendered, and the party claiming compensation therefor has the burden of rebutting that presumption, McDaniel v. McDaniel, supra, 305 S.W.2d at 464, but proof of a special or express contract for remuneration has never been required in this jurisdiction.[3] In a case of this kind, it is enough for the plaintiff to introduce evidence from which a jury may reasonably find that the plaintiff and the deceased mutually understood that the services rendered and received were not voluntary but were for remuneration.[4] In ruling on the appellants' earnest contention that there is no evidentiary basis for the verdict, it must also be borne in mind that the respondent is entitled to the most favorable construction

1. All references to statutes and rules are to RSMo (1959), V.A.M.S. and V.A.M.R., unless otherwise noted.

2. See McDaniel v. McDaniel, Mo., 305 S.W. 2d 461, 464 [1, 2] (banc); Kopp v. Traders Gate City Nàt. Bank, 357 Mo. 659, 665–666, 210 S.W.2d 49, 51 [3–5] (banc); Lillard v. Wilson, 178 Mo. 145, 152–158, 77 S.W. 74, 75–77 [1]; Vosburg v. Smith, Mo.App., 272 S.W.2d 297, 301 [1–6]. There are elaborate collations of authority to be found 11 L.R.A. (N.S.) 873–913 (1908), and 7 A.L.R.2d 8–191 (1949).

3. Cowell v. Roberts' Executor, 79 Mo. 218, 221 [1]; Hart v. Hart's Adm'r, 41 Mo. 441, 444–445; Guenther v. Birkicht's Adm'r., 22 Mo. 439, 448.

4. McDaniel v. McDaniel, supra, 305 S.W. 2d at 466; Chandler v. Hulen, 335 Mo. 167, 172, 71 S.W.2d 752, 755 [1, 2]; Brown v. Holman, 292 Mo. 641, 650, 238 S.W. 1065, 1067 [2,3]; Vosburg v. Smith, supra, 272 S.W.2d at 301; Liebaart v. Hoehle's Estate, Mo.App., 111 S.W.2d 925, 929 [7].

of the evidence, and to the benefit of all reasonable inferences to be drawn from it.[5]

■ Both the defendants and the plaintiff have argued the force of the evidence from a number of aspects, but in our view it is unnecessary to consider all the inferences possible upon the proof adduced. For example, the defendants argue that there can be no question but that a family relationship existed between the plaintiff, her family and the deceased during the entire period in question, and we think the jury might so have concluded. However, they appear to have lived for many years under a contractual agreement whereby Mr. Winschel paid taxes on the house and plaintiff and her husband paid for all the groceries and utilities, and this is a circumstance which could be interpreted as negativing the existence of an ordinary family relationship, Lillard v. Wilson, supra, 178 Mo. at 157–158, 77 S.W. at 76–77; Anno., supra, 7 A.L.R.2d at 41–44, Section 16, and as tending to rebut the idea that plaintiff's services were gratuitous. The defendants also vigorously argue the idea of payment, pointing to the fact that after the plaintiff moved to Cape Girardeau Mr. Winschel paid the sum of $35.00 per month for board and room, and calling our attention to the evidence that from September 1962 to the date of decedent's death the plaintiff received the sum of $125.00 per month in payment for her services, apparently by family agreement. The fact that the decedent paid board and room, however, would give rise to no presumption that such payment was intended as full satisfaction for all services rendered to him, Fry v. Fry, 119 Mo.App. 476, 479, 94 S.W. 990, 991 [3], and it was for a jury to decide whether the partial payments made constituted full payment of all that the decedent owed. Vosburg v. Smith, supra, 272 S.W.2d at 302 [10]; Aldridge v. Shelton's Estate, Mo.App., 86 S.W.2d 395, 400 [17].

The appellants also argue that there is no evidence that Mr. Winschel needed any services before he became ill in 1958, but this argument is very unconvincing in view of the uncontradicted evidence that in June 1947 he was already 72 or 73 years old, and both his hearing and sight were impaired. Also the fact that during the entire time involved the services in question were rendered by only one of the decedent's nine children, without participation by the other children, is a factor rebutting the presumption that the services were gratuitously rendered. Allmon v. Allmon, supra, 314 S.W.2d at 462; Liebaart v. Hoehle's Estate, supra, 111 S.W.2d at 930.

■ The defendants also vigorously argue that there is no evidence of any understanding on the plaintiff's part that she would be compensated, and they call attention to our ruling in Trantham v. Gullic, Mo.App., 201 S.W.2d 522, 527 [5], that the plaintiff must show " * * * an intention and willingness to pay on the one hand and at the time the services are rendered, an expectation to be compensated * * * with knowledge of the intention to pay." Yet, as we pointed out in Vosburg v. Smith, supra, 272 S.W.2d at 302, the intention to charge is frequently not so clear, in cases of this kind, because the plaintiff is precluded from testifying by the provisions of Section 491.010. The evidence here, granting it the most favorable intendment, was that plaintiff left gainful employment to return to her parents' home, and stayed on with her father after her mother's death for some ten years, foregoing, on one occasion, the pleasure of establishing her own home, and finally taking her father into her home when she eventually acquired it. Though the evidence is doubtless subject to other inferences, it reasonably could be found that the decedent had, on several occasions in plaintiff's presence, indicated an intention to

5. Ashley v. Williams, 365 Mo. 286, 290, 281 S.W.2d 875, 877–878 [1]; Kopp v. Traders Gate City Nat. Bank, supra, 357 Mo. at 665, 210 S.W.2d at 50 [1]; Allmon v. Allmon, Mo.App., 314 S.W.2d 457, 459 [1]; Vosburg v. Smith, supra, 272 S.W.2d at 303 [14].

compensate her. We consider it reasonable to infer that plaintiff would not have left her employment, foregone her own home, lived in two rooms in her father's house with a growing family, and performed the varied services she rendered, unless she understood she would be compensated. Kopp v. Traders Gate City Nat. Bank, supra, 357 Mo. at 667, 210 S.W.2d at 52. And so far as the decedent's intention to pay is concerned, it is true that his statement " * * * that she should get paid for her services * * *" might be regarded as a mere expression of gratitude, but statements of no greater force have been taken as indicative of an intention to pay. See Lillard v. Wilson, supra, 178 Mo. at 151, 77 S.W. at 74; Fry v. Fry, supra, 119 Mo.App. at 477–478, 94 S.W. at 990. Taken in sum, we believe the evidence was sufficient to overcome the presumption that the plaintiff's services were gratuitously rendered.

The defendants further argue that Mr. Winschel's will, executed in 1947, had no value as evidence and should not have been admitted, as we take their argument, because the document had not been fully qualified as a declaration against interest. The respondent plaintiff answers that the will was properly admitted as evidence of the deceased's intention to remunerate her, or any of his children who cared for him in his advanced years.

■ The document received in evidence is a will executed April 11, 1947, several days after Mrs. Winschel died. In this will, Mr. Winschel undertook to dispose of all of his estate. There are some interlinea-tions, indicating a change of circumstances, but the first paragraph reads:

"1st. I want all of my just debts paid, and I also want the child or children who shall care for me in my old age paid generously, for such attention, besides such person, child or children, shall be entitled to the proceeds of the Insurance Policy which I carry in the New York Life Insurance Company, which said policy is now payable to my estate."

We find a number of cases involving claims for services against the estate of a deceased relative in which a document of this general nature, or testimony concerning such a document, has been received in evidence.[6] Though the cases are not uniform in stating the basis for admission of such documents, we think the deceased's will was admissible in this case, because the plaintiff was within the class of persons whom the deceased wanted "paid generously," and after all, in a very elementary sense, a will is a declaration of a man's intentions. 94 C.J.S. Wills § 1 a., p. 676. It was incumbent upon the plaintiff here to establish Mr. Winschel's intention to compensate her for her services. We believe the will was relevant and admissible to show the decedent's intention to pay, Lillard v. Wilson, supra, 178 Mo. at 158–159, 77 S.W. at 77[2], and that evidence of any interlineation subsequent to its execution might diminish its force but would not render it inadmissible.

■ The defendants next say that the testimony given by Mr. Cyril Glastetter,

6. See Chandler v. Hulen, supra, 335 Mo. at 174, 71 S.W.2d at 756 (one claimant named beneficiary, will made eight years after beginning of rendition of services; held: admissible to throw some light on question of decedent's intention); Brown v. Holman, supra, 292 Mo. at 655, 238 S.W. at 1069 [4] (a paper reciting that if claimant "remains in my employ until my death" claimant to receive compensation at $50.00 per month, admitted as declaration against interest); Lillard v. Wilson, supra, 178 Mo. at 158–159, 77 S.W. at 77 [2] (a written statement expressing desire to compensate claimants held admissible as bearing on the intention of the deceased); Cowell v. Roberts' Executor, supra, 79 Mo. at 222–223 [2] (evidence as to contents of wills held to support presumption the services rendered were gratuitous); Brawley v. Harwell, Mo.App., 236 S.W.2d 419, 421–422 [5] (evidence concerning decedent's wills held admissible to corroborate plaintiff's other evidence).

the plaintiff's husband, should have been rejected because Mr. Glastetter was disqualified by the provisions of Section 491.010, the so-called Dead Man's Statute. The defendants' claim of error is somewhat vague and diffuse, but their argument, as we understand it, is that the plaintiff's husband should have been made a party, but was not, and that he is actually a real party in interest.

We cannot agree with this contention. The record discloses that the plaintiff's claim was for the reasonable value of housekeeping and nursing services which she alone rendered for Mr. Winschel over a 16-year period. It is true that after Mr. Winschel and the Glastetters moved to Cape Girardeau, Mr. Winschel lived in a house which presumably belonged to the plaintiff and her husband, but no claim was made in this case for the room and board furnished by plaintiff and her husband, and Mr. Glastetter testified positively that he performed none of the services for which compensation was being claimed. The only interest which Mr. Glastetter had in the cause of action on trial appears to have been that he wanted his wife to succeed in recovering the value of her services; he made no claim to the proceeds of her labor, and no claim that Mr. Winschel intended to compensate him and his wife jointly. In these circumstances, Mrs. Glastetter alone was the proper party plaintiff, for she was asserting only her own cause of action,[7] and Mr. Glastetter was not disqualified merely because he was interested in the outcome of the case as plaintiff's husband, or because he stood to gain indirectly if his wife was successful.[8]

The defendants also contend that the court erred in receiving the testimony of Bill Thompson, a registered nurse, who gave evidence as an expert concerning the value of the services rendered by the plaintiff. The defendants say Mr. Thompson was not properly qualified as an expert. This assignment need not detain us long, because as our Supreme Court pointed out in Ashley v. Williams, supra, 365 Mo. at 293–294, 281 S.W.2d at 880 [9], the competency of a witness to testify as an expert to the reasonable value of services such as were rendered here is a matter peculiarly within the discretion of the trial court, and because, despite occasional suggestions to the contrary,[9] it is now firmly established that the reasonable value of domestic or nursing services in a case of this kind is a matter of common knowledge,[10] and proof of the value of plaintiff's services was not essential to a recovery. Even if Mr. Thompson was not qualified as an expert, there was no error in receiving his testimony, Sprague v. Sea, 152 Mo. 327, 334, 53 S.W. 1074, 1076 [3], and there is no merit in this assignment.

What we have already said disposes of the defendants' point that the evidence proves payment of the decedent's obligation. They have also objected to plaintiff's Instruction 1, but without setting forth the instruction or the questioned part

7. Lillard v. Wilson, supra, 178 Mo. at 159, 77 S.W. at 77 [3]; Elstroth v. Karrenbrock, Mo.App., 285 S.W. 525, 528 [5]; Browning v. Bailey, 216 Mo.App. 122, 124–126, 261 S.W. 350, 351–352 [1] [2]; Shern v. Sims, Mo.App., 258 S.W. 1029, 1031 [5].

8. Embry v. Martz' Estate, Mo., 377 S.W.2d 367, 371–372 [3]; Ashley v. Williams, supra, 365 Mo. at 292, 281 S.W.2d at 879 [5]; Martin v. Abernathy, 220 Mo.App. 76, 78, 278 S.W. 1050, 1051 [4, 5]; Bush v. Evans, 218 Ark. 470, 236 S.W.2d 1013, 1015 [2]; 58 Am.Jur. Witnesses, § 320,

p. 196; Note, The "Dead Man's Statute" in Missouri, 23 Wash.U.L.Q. 343, 353–354 (1938).

9. See, e.g., Elstroth v. Karrenbrock, supra, 285 S.W. at 528 [6, 7].

10. Ashley v. Williams, supra, 365 Mo. at 294, 281 S.W.2d at 881 [10]; McDonough v. Freund, 323 Mo. 346, 355, 19 S.W.2d 285, 287; Murray v. Missouri Pac. Ry. Co., 101 Mo. 236, 241, 13 S.W. 817, 818 [2]; Boyher v. Gearhart's Estate, Mo. App., 367 S.W.2d 1, 5 [5]; Wise v. Rubenstein, Mo.App., 24 S.W.2d 203, 205–206 [6].

of it in their brief, as required by Rule 83.05(a), and without stating any reason why the instruction is erroneous or prejudicial, beyond saying that it was confusing to the jury. Nothing is presented for review by such an insufficient assignment. Rule 83.05(a); Wilcox v. Swenson, Mo., 324 S.W.2d 664, 671 [8].

 The defendants' final point is that the verdict is excessive. In part, their argument is based upon factual contentions which we have already discussed. They reiterate their claim of payment, and the evidence does disclose that some payment was made to the plaintiff during the last five years of Mr. Winschel's life, and that from September 1962 to the date of Mr. Winschel's death the amount of payment was increased substantially. It was for a jury to decide, however, whether these payments were intended as full payment. Vosburg v. Smith, supra, 272 S.W.2d at 302 [10]. The defendants also base their claim of excessiveness in part upon their repeated assertion that Mr. Winschel was "not in need of" any "special attention" until he became ill in January 1962, but we confess that we do not follow this argument upon this record. As we have noted, Mr. Winschel was already 72 to 73 years old when the plaintiff began living with him in Perryville, and both his sight and hearing were impaired. In our view of the matter, it is not even arguable that he would require no housekeeping or personal services whatever, even though he could dress and feed himself without assistance. Also, we think we must reject the defendants' argument that plaintiff was entitled to recover only for the period from January 1962 to January 1963. The evidence was that plaintiff's services were continuously rendered over the 16-year period involved except for a short period when Mr. Winschel was away for medical attention. We are therefore of the opinion that the plaintiff was entitled to recover for the entire period from 1947 to 1963, inasmuch as her rendition of services constituted a "single, entire, continuous employment." Minor v.

Lillard, Mo., 289 S.W.2d 1, 6; Poage v. Parker, Mo.App., 343 S.W.2d 203, 205 [4]. We cannot, for any reason assigned here, say that the allowance was excessive.

It appears that the case was tried without reversible error, and the judgment is therefore affirmed.

RUARK, P. J., and STONE, J., concur.